**In re SPATS RESTAURANT & SA-LOON, a partnership, Debtor.**

**Bankruptcy No. 86–00159.**

United States Bankruptcy Court,
D. Nevada.

Sept. 5, 1986.

Harold G. Albright, Reno, Nev., for debtor.

John R. Martz, Reno, Nev., for movant.

## MEMORANDUM DECISION AND ORDER

JAMES H. THOMPSON, Bankruptcy Judge.

Again this court is confronted with the issue of the proper interpretation of Bankruptcy Code (11 U.S.C.) § 365(d)(4), a provision of the 1984 amendments which often proves problematical for. debtors-in-possession and trustees. That section provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Spats filed for bankruptcy under Chapter 11 on February 11, 1986. The automatic stay of § 362 operated to stop the eviction proceedings that the Lessor, Scott Motor Company, had initiated in state court. On February 27, Mr. Lurie, the principal of the

debtor, brought Ms. Patricia Ezell to meet Mr. Ben Scott. She was introduced as the "new owner" who would operate the restaurant under the name of "Player's Choice". The parties discussed past problems and future plans. Scott wished Ezell good luck. They also discussed the transfer of the lease from Lurie to Ezell. Scott told Ezell to request a transfer in writing. This was not done.

Scott visited the restaurant once or twice thereafter and indicated vague approval of the new alterations and sign. He certainly expressed no disapproval. In addition, he accepted rent from Ezell. At some point Lurie advised Spats' attorney that Scott had accepted Ezell as the "new owner", and that nothing more needed to be done. Spats' attorney did not file a motion to assume the lease, or a motion for extension of time to assume, before the expiration of the 60–day period under § 365(d)(4). Timely assumption, of course, is a prerequisite to an assignment of the lease. See discussion below.

On April 18, shortly after the expiration of the assumption period, Lessor filed a motion seeking a determination under § 365(d)(4) that the lease was rejected by operation of law, and requesting that it be allowed to evict the tenants. Debtor advances what have become very familiar arguments in opposition to such motions: That the debtor assumed the lease by conduct, or that the lessor waived its § 365(d)(4) rights, or should be estopped from insisting on the automatic rejection provision.

### Assumption by Conduct

■ This Court has previously held that a debtor does not "assume" a lease under § 365 merely by making rental payments. *In re Las Margaritas, Inc.,* 54 B.R. 98 (Bankr.D.Nev.1985). *See also In re Speed Fab-Crete of Nevada,* 57 B.R. 720, 722–723 (Bankr.D.Nev.1986) (a debtor does not assume an executory contract merely by conforming to its terms). *Las Margaritas* relies partially on *In re By-Rite Distributing, Inc.,* 47 B.R. 660 (Bankr.D.Utah 1985).

There, Judge Allen held that in order to prevent automatic rejection under § 365(d)(4), the debtor must not only file a motion to assume within the 60 day period, but the court must actually rule on the motion and approve the assumption before the expiration of the time period. This decision was reversed by the District Court at 55 B.R. 740 (D.Utah 1985). District Judge Jenkins held that the timely filing of the motion to assume is *sufficient* to prevent automatic rejection; the court need not rule on the motion within the 60 day period. However, since the debtor in *By-Rite* had timely filed its motion, Judge Jenkins found it unnecessary to decide whether some action short of filing a motion may be sufficient; *i.e.,* whether an executory contract or unexpired lease may be assumed by conduct or by implication. See *id.* at 742 n. 5.

This issue has now been directly addressed and decided by the Bankruptcy Appellate Panel of the Ninth Circuit. In *In re Treat Fitness Center, Inc.,* 60 B.R. 878 (Bankr. 9th Cir.1986), the Panel affirmed the Bankruptcy Court and unequivocally held that the assumption required by § 365(a) and (d)(4) cannot be accomplished by "word or deed" from which the court must infer an intent to assume. Rather, debtor or trustee must timely file a motion to assume as provided by Bankruptcy Rules 6006 and 9014. "To not follow these rather explicit rules would be to lead us back into the morass of attempting to judge the meaning and import of the conduct and conversations of the parties." *Id.* at 879. The Ninth Circuit Court of Appeals has also recently held that assumption under § 365 requires express approval of the court. *In re Harris Management Co., Inc.,* 791 F.2d 1412, 1414–15 (9th Cir.1986). This court follows its own prior decisions and the law of this Circuit in now holding that the debtor Spats did not assume the subject lease by its conduct.

### Waiver and Estoppel

In *Treat Fitness Center* the debtor argued that its ongoing discussions with the

landlord concerning assignment, sub-lease, or purchase of the lease should be deemed by the court to be conduct equivalent to assumption. Although the Panel rejected this line of reasoning, it did not address whether the *lessor's* conduct may give rise to waiver or estoppel.

*Las Margaritas* briefly addresses estoppel. There, this Court held that the lessor's mere acceptance of rental payments, without more, cannot estop the lessor from insisting on the automatic rejection provisions of § 365(d)(4). 54 B.R. at 100. However, the debtor Spats argues that Scott did more than just accept rent from the debtor. In fact, Scott accepted rent from the "new owner", Ms. Ezell, and indicated his approval of her. The debtor contends that under non-bankruptcy law, the actions of both the lessor and lessee operate as a "surrender" of the lease and an irrevocable acceptance by the lessor of the new tenant, citing *Washoe County Bank v. Campell*, 41 Nev. 153, 167 P. 643 (1917). The debtor also relies on *In re Haute Cuisine, Inc.*, 57 B.R. 200 (Bankr.M.D.Fla.1986), in which the court applied estoppel against the landlord in a § 365(d)(4) context.

The Court doubts whether the equitable doctrines of waiver and estoppel have any application at all in the context of rejection by operation of law as provided by § 365(d)(4). In interpreting similar provisions of the former Bankruptcy Act as well as § 365, courts have described the statutory rejection as a *conclusive presumption* of rejection. *In re Lovitt*, 757 F.2d 1035, 1041 (9th Cir.1985); *Treat Fitness Center*, 60 B.R. at 879; *Wiemever v. Koch*, 152 F.2d 230, 234 (8th Cir.1945); *In re Re-Trac Corp.*, 59 B.R. 251, 257 (Bankr.D.Minn. 1986). Upon rejection, the lease is terminated. *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805, 810 (Bankr.C.D.Cal.1985). How can any action or inaction by the lessor *subsequent* to the 60–day period breathe new life into a lease which must conclusively be presumed to be terminated? "Payments made after the statutory period are not payments made under the lease, but payments made as reasonable value for the use of the premises." *Re-Trac* at 257.

This is consistent with nonbankruptcy law regarding the effect of continued possession by a lessee and acceptance of payments by a lessor following the expiration of a lease. *See e.g.* Nev.Rev.Stat. 118A.470 (landlord's consent to tenant's continued occupancy after expiration of a lease creates a month to month tenancy at best); *Montana-Fresno Oil Co. v. Powell*, 219 Cal.App.2d 653, 669–70, 33 Cal.Rptr. 401 (1963) (once oil and gas lease has expired by its own terms, no subsequent action or inaction of lessor can estop him from asserting termination, nor subject him to defenses of laches or waiver).

■ *During* the 60–day period, the debtor is required by the Code to perform timely all obligations under the lease, and the lessor's acceptance of such performance cannot constitute a waiver or relinquishment of any of his rights under state law or other provisions of the Bankruptcy Code. § 365(d)(3); *Re-Trac*, 59 B.R. at 256–57. Finally, allowing the debtor to raise these relatively unstructured equitable doctrines as defenses leads the court right back to the undesirable position of having to judge the meaning of the conduct and conversations of the parties, see *Treat Fitness Center* at 879, and exposes the lessor of non-residential real property to a range of uncertainties regarding the status of his lease which § 365(d)(4) was designed to eliminate. See *Las Margaritas*, 54 B.R. at 100.

Notwithstanding the Court's hesitation to apply these doctrines at all, the Court finds that the facts of this case do not give rise to waiver or estoppel against the lessor, Scott Motor Company.

■ "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *C.B.S., Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir.1983). A waiver requires the existence at the time of the alleged waiver of a right, privilege, advantage or benefit which may be waived. *In re Haute Cuisine*, 57 B.R. at 203. This equitable doctrine "serves to prevent a par-

ty from insisting on a right upon which he could have insisted earlier but has been found to have surrendered." *Orlik Ltd. v. Helme Products Inc.*, 427 F.Supp. 771, 776 (S.D.N.Y.1977). A waiver may be expressed or implied from conduct. *Haute Cuisine* at 203. However, if proof of waiver rests upon one's acts, those acts "should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of [one's] conduct is possible." *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1340 (9th Cir.1976).

■ The lessor's right to insist upon automatic termination of the lease and immediate surrender of the premises under § 365(d)(4) does not arise until after the 60–day period has expired. Therefore, until this occurs, there is no right in existence which can be waived. Moreover, Scott did not in fact waive his rights under § 365. There was no express waiver during the 60–day period. Being entitled to rent for the use of the premises, there is no waiver in accepting rent, as § 365(d)(3) expressly provides. Scott's other conduct during this period is perfectly consistent with a "wait-and-see" approach with regard to the debtor and Ezell. Scott testified that there had been a succession of different operators of the Spats business. In his discussion with Ezell on February 27, regarding assignment to her, Scott told her that any such request must be in writing which was never done. Scott had no way of judging the seriousness of Ezell's intentions to formally take over the lease. Less than two months after this discussion, the 60–day period expired and Scott filed his Motion for a determination that the lease was terminated under § 365(d)(4), clearly indicating his intention to assert those rights. There is no basis for the Court to find a waiver by conduct.

■ Whereas a waiver is a voluntary and intentional abandonment or relinquishment of a known right, equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish or change any existing right.

Therefore, even though a party has not waived a right, he may be estopped to assert it. *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir.1979) *cert. denied* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). The defense of estoppel is an equitable principle based on the acts or conduct of a party against whom it is invoked. *Haute Cuisine*, 57 B.R. at 203. Although the Bankruptcy Court is a court of equity, and guided by equitable principles, *id.*, estoppel cannot rest on general notions of unfairness alone. *See American Savings v. Bell*, 562 F.Supp. 4, 9 (D.D. C.1981).

The Ninth Circuit has defined equitable estoppel as

[the] doctrine by which a person may be precluded by his act or conduct ... from asserting a right which he otherwise would have had. [Citation.] The effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Black's Law Dictionary 483 (5th ed. 1979), *cited in part in Jablon* [v. U.S.], 657 F.2d [1064] at 1068 [ (9th Cir.1981) ]; the doctrine has also been described as standing for the principle that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.

*Hass v. Darigold Dairy Products Co.*, 751 F.2d 1096, 1099–1100 (9th Cir.1985). To apply this doctrine, the court must find the following elements:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has *a right to believe it is so intended;* (3) the latter must be ignorant of the true

facts; and (4) he must rely on the former's conduct to his injury.

*Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir.1985) (emphasis added).

■ Here, the Court cannot find that Scott intended his conduct to indicate to the debtor that the debtor need not comply with the requirements of § 365. Furthermore, the debtor had no right or reason to believe it was so intended and hence did not *reasonably* or *justifiably* rely on Scott's conduct in failing to timely file a Motion to Assume. Other courts have noted that an act (or, as in this case, inaction) which is the result of a party's own will or judgment rather than the result of what another represented cannot be the basis for equitable estoppel. *See e.g. Puritan Insurance Co. v. Canadian Universal Insurance Co., Ltd.,* 586 F.Supp. 84, 87 (E.D.Pa. 1984), *rev'd on other grounds,* 775 F.2d 76 (3rd Cir.1985).

In the matter before this Court, the debtor in possession, Spats, is charged by statute with the burden of taking affirmative action to assume its lease. *Las Margaritas,* 54 B.R. at 100. Lessor's acceptance of rent simply cannot raise an estoppel under § 365(d)(4), as the lessor has a right to be paid for the use of his property. See *id.;* § 365(d)(3); *Re-Trac,* 59 B.R. at 256–57. Scott's indications of approval of Ezell, and his failure to raise any objections from February 27 to the expiration of the 60–day period, also cannot estop Scott from insisting on his rights under § 365(d)(4). Debtor or his attorney believed that Scott's "acceptance" of Ezell made it unnecessary to comply with § 365. Because § 365 puts the burden of action on the debtor, Scott's conduct cannot be deemed to be the cause of debtor's failure to timely file a Motion to Assume. Debtor's predicament was caused by his own mistaken judgment as to what § 365 requires.

Debtor insists that Scott's alleged acceptance of Ezell as the "new owner" is sufficient to estop Scott from now objecting to an assignment of the lease to her. But debtor has put the cart before the horse. If this Court were to find that there is a lease in existence which is capable of being assigned, the Court might find that Scott is estopped from objecting to an assignment to this *particular* assignee (or has waived his right to now complain). But the Court must first find that the lease is still in existence. Once a lease is rejected by operation of law or otherwise, it is terminated, and the Court has no authority or ability to approve its sale or assignment. *See Las Margaritas* at 99 and cases cited.

■ Also without merit is debtor's argument that since the lease was assigned to Ezell during the 60–day period, there was no longer anything for the debtor to assume and hence no compliance with § 365 was necessary. First, an assignment of a lease which is property of the estate is a sale or use of property out of the ordinary course of business under 11 U.S.C. § 363(b). The trustee or debtor in possession may so act only "after notice and a hearing." *Id.* Bankruptcy Rule 2002(a)(2) prescribes notice to all creditors and other parties in interest. Debtor did not comply with these provisions during the 60–day period, nor did Ezell comply with Scott's requirement that any request for assignment be in writing. Finally, Ezell herself was very confused and unclear as to what it was that she thought she bought from the debtor. For all these reasons, the Court concludes that there was in fact no assignment of the lease during the 60–day period.

■ Debtor's reliance on *Washoe County Bank v. Campell* and *Haute Cuisine* is misplaced. *Washoe County Bank* concerned the non-bankruptcy law doctrine of "surrender." "Surrender" is a term of art in landlord-tenant law. It refers to the release of a tenant's liabilities under a lease. The doctrine and hence the case have no applicability to the issues before this Court. Furthermore, to the extent that the requirements of · § 365(d)(4) are inconsistent with state law, the Supremacy Clause mandates that the court follow bankruptcy law. *See Southwest Aircraft,* 53 B.R. at 810.

*Haute Cuisine* is factually distinguishable from this case. There, the lessor and debtor-lessee had entered into a settlement agreement whereby the debtor agreed to consent to the court's granting the lessor's previously-filed motion to dismiss; agreed to assign its lease to a particular assignee with the lessor's consent; and agreed that the assignment and sale would be consummated outside of the Bankruptcy Court after the dismissal. 57 B.R. at 201. In reliance on this stipulation, the debtor failed to file a motion to assume the lease within the 60–day period. The proposed assignee later decided that the sale and assignment should be accomplished within the Chapter 11 proceeding with the approval of the court. The debtor and lessor agreed, and the lessor withdrew his motion to dismiss. The lessor then filed a motion for immediate possession of the premises, arguing that since the time for assumption under § 365(d)(4) had expired, the lease was deemed rejected as a matter of law. The court applied estoppel against the lessor, concluding that the debtor had been induced by and reasonably relied on the settlement agreement in failing to timely file a motion to assume under § 365(d)(4). There, the debtor justifiably believed that it need not comply with § 365, as the three parties involved in the negotiations had initially agreed that the case would be dismissed, hence § 365 would be irrelevant. *Id.* at 203–04. To the contrary, in the matter *sub judice*, the debtor's failure to comply with § 365 was due to his own ignorance as to the requirements of the law. Here, the lessor's conduct did not cause or induce debtor's inaction.

To conclude, it is the judgment of this Court that the subject lease was not assigned to Ezell, and that it has terminated by operation of § 365(d)(4). Accordingly, the Court denies debtor's untimely motions to assume the lease and for approval of assignment, and hereby orders that debtor and Ezell, or anyone now occupying the premises by agreement with either of them, shall immediately surrender the premises to the Lessor. 11 U.S.C. § 365(d)(4).

IT IS SO ORDERED.