**In re Robert ADAMS d/b/a Press Graphics, Debtor.**

**Bankruptcy No. 86–03018K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 6, 1986.

As Amended Oct. 8, 1986.

Geri H. Gallagher, Norristown, Pa., Atty. for Moving Parties.

Jack K. Miller, Suzanne J. Young, Law Clerk, Philadelphia, Pa., Attys. for Debtor.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before the Court is a Motion by landlords requesting this Court to reconsider our previous Order requiring the landlords to restore electric service to the business premises of the tenant-debtor, unilaterally terminated by the landlords subsequent to the filing of this case, and to order the debtor to vacate the premises on the strength of the language of 11 U.S.C. § 365(d)(4), which states that a nonresidential lease, if deemed rejected, requires the debtor to "immediately surrender" this property. Because we believe that an order granting relief from the automatic stay, as well as a state court judgment for possession, must precede any eviction of any tenant, irrespective of the presence of 11 U.S.C. § 365(d)(4), and must precede as well the landlords' taking any act to adversely affect the tenant's leasehold inter-

est, such as termination of utility service, we shall deny this Motion.

On June 16, 1986, the Debtor filed the instant bankruptcy case under Chapter 13 of the Code. At the time of filing, the Debtor operated a business known as Press Graphics from a premises leased from Fred Schindler and Associates and Edward Baliban (referred to hereinbefore and hereinafter as "the landlords") at 1752 Limekiln Pike, Dresher, Montgomery County, Pennsylvania. Not listed as creditors and unaware of the filing of the bankruptcy, and alleging non-payment of rent as a reason for doing so, the landlords unilaterally terminated the electric service to the premises on August 25, 1986.

On August 28, 1986, we conducted an expedited hearing on the Debtor's Application to Hold Creditor in Contempt, Impose Fees, and Assess Counsel Fees. The Debtor, his Counsel, and Mr. Baliban pro se appeared. Mr. Baliban admitted that he had shut off the Debtor's electric service as a means of attempting a self-help eviction, and that the Debtor's Counsel had advised him of the bankruptcy filing and the illegality of his actions shortly after the termination of service, but that he had taken no action to restore that service. Since Mr. Baliban appeared to have acted due to a good faith misunderstanding of his rights, we declined to impose any penalties upon him, but merely directed that he restore the Debtor's electric service by 4:00 P.M. that day. The landlords complied with that directive, and no further action has been taken by the Debtor on that matter.

On September 8, 1986, the landlords filed the instant Motion. We granted their request for an expedited disposition, and ordered the matter for hearing on September 18, 1986. On that date, we denied the Debtor's Motion for a Continuance, even though the Debtor accurately pointed out that service of the Motion had not been made on the Debtor himself, as required by Bankruptcy Rule 7004(b)(9) and Local Bankruptcy Rule 9014.1(d)(3).

At that hearing, the landlords argued that the presence of 11 U.S.C. § 365(d)(4), which states as follows, required this Court to reconsider and vacate its previous Order of August 28, 1986, and Order the Debtor to vacate the premises forthwith:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

After hearing arguments from Counsel for the Debtor and the landlords on September 18, 1986, we concluded that the lease in issue appeared to have been rejected by the Debtor by operation of § 365(d)(4). However, we observed that we believed that the automatic stay imposed by 11 U.S.C. § 362(a) barred the relief sought by the landlords irrespective of whether the lease had been rejected or not. We did allow the landlords until September 23, 1986, to submit a Brief on this issue, and the Debtor was allowed until September 30, 1986, to respond. We note that, on September 19, 1986, the landlords filed a Motion for Relief from the Automatic Stay, and that this Motion was scheduled for expedited disposition on October 2, 1986, by Order of Chief Bankruptcy Judge Emil F. Goldhaber, but was continued by mutual agreement of the parties until October 8, 1986. It remains yet to be heard as of the date of this Opinion and Order. We also note that, on October 6, 1986, the landlords filed a Reply Brief, which we have also considered.

We are not surprised to discover that the landlords cite no cases holding that a rejection of a lease per 11 U.S.C. § 365(d)(4) overrides the impact of the automatic stay, per 11 U.S.C. § 362(a). In fact, none of the cases cited by the landlords address the interplay between these sections of the Code at all. It is true that, in one case

cited, *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bankr.C.D.Cal.1985), the Court, after dismissing the Debtor's argument that it did not reject the lease, did order the Debtor there to immediately surrender the property to the landlord. However, in another authority cited by the landlords in purported support of their position, *In re Mead*, 28 B.R. 1000 (E.D.Pa.1983) (per Shapiro, D.J.), the Court, while agreeing that the lease in issue there was rejected, appears to recognize that the landlord must seek relief from the stay before proceeding to oust the tenant. *See* 28 B.R. 1001 and 1002 n. 2. The Debtor, in his Brief, cited *In re Re-Trac Corp.*, 59 B.R. 251, 258 (Bankr.D.Minn.1986), where the Court expressly disapproved that aspect of the *Southwest Aircraft* Order directing the debtor to immediately surrender and vacate the leased premises, although the *Re-Trac* Court did proceed to modify the stay to allow the landlord to pursue its state law remedies to attempt to evict the debtor.

We believe that the result here is commanded by the numerous authorities for the principle that "the automatic stay is one of the most fundamental debtor protection devices provided by the [Bankruptcy] Code." *In re R.R.S., Inc.*, 7 B.R. 870, 872 (M.D.Fla.1980). So broad and so powerful is the scope of the automatic stay that it has been held that it attaches immediately, without the debtor's even seeking same, *In re Willis*, 2 B.R. 643, 645 (W.D.Va.1980), and applies to informal as well as formal collection activities by the creditor. *See In re Mimi's of Atlanta, Inc.*, 5 B.R. 623, 627 (N.D.Ga.1980). The stay protects all property of the estate, and the term "estate" is broadly defined to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). That the stay, per 11 U.S.C. § 362(a)(3), applies to protect any possessory interest which the tenant has in real property as of the date of a bankruptcy filing, even if the landlord claims to have validly terminated the tenancy interest per applicable state law procedures, can scarcely, at this point, be doubted. *See, e.g., In re Morales*, 45 B.R. 314, 316

(Bankr.E.D.Pa.1985) (per Twardowski, B.J.), *aff'd*, Civil Action No. 85–1159 (E.D. Pa., Opinion dictated by Van Artsdalen, J., April 25, 1985); *In re Gambogi*, 20 B.R. 587, 590 (Bankr.D.R.I.1982); *In re Lewis*, 15 B.R. 643, 644–45 (E.D.Pa.1981) (per Goldhaber, Ch.B.J.); and *Matter of Pickus*, 8 B.R. 114, 118 (Bankr.D.Conn.1980).

The potential tension between 11 U.S.C. § 362 and 11 U.S.C. § 365, in a residential lease setting, was considered by the Court in *In re Knight*, 8 B.R. 925, 928–29 (Bankr. D.Md.1981). We totally agree with the statements in *Knight*, at 929, that "[t]he provisions of § 365 seem solely to contemplate contracts and leases arising in a commercial context or possibly ones which could produce income for the estate," and that "the trustee's rejection of a residential lease constitutes an abandonment of the estate's interest in the lease to the Debtor," rather than paving the way to the tenant's eviction. Therefore, if the lease in issue were a residential lease, we would clearly be inclined to rule that § 365 has no impact on the attempt of a landlord to dispossess a tenant.

This case, of course, involves a non-residential lease, and therefore different consequences may ensue. However, we do note that, in reciting the legislative history of § 365(d)(4), the landlords quote Senator Hatch as explaining this provision as establishing a time-limitation upon which a non-residential real estate lease can be assumed or rejected in a Chapter 11 or Chapter 13 case, similar to that in a Chapter 7 case. *See* 130 CONG.REC. S8891, S8894 (June 29, 1984); 11 U.S.C. § 365(d)(1). In cases such as *Lewis, supra,* where it might have been argued that the lease was rejected, as per 11 U.S.C. § 365(d)(1), the Court never stopped to consider whether this factor affected the application of § 362(a). We believe, as a result, that many cases have impliedly rejected the reasoning suggested here by the landlords and employed by the Court in *Southwest Aircraft.* We therefore have no hesitancy in joining the *Re-Trac* Court in criticizing and refusing to follow *Southwest Aircraft* and rejecting

the arguments of the landlords here that § 365(d)(4) constitutes an exception to the application of § 362(a).

One other aspect of the conduct and position of the landlords here demands our attention. The landlords have not alleged that they have at any time commenced any state court proceeding to evict the tenant, let alone obtained a judgment for possession against him. In arguing that the effect of § 365(d)(4) renders resort to state law unnecessary, the landlords seem to argue that self-help evictions and actions in furtherance of self-help evictions, such as the termination of a tenant's electric service, are perfectly proper under the laws of this state.

█ We have already expressed our view that § 365(d)(4) does not supersede § 362(a) of the Code. If it did not already follow of necessity from that conclusion, we also state that it is inconceivable that Congress would intend to place in the Bankruptcy Code a provision which would allow creditors to short-circuit established state law landlord-tenant procedures to the detriment of debtors. That result would follow, however, if we interpreted § 365(d)(4) in such a way as to allow the landlords to immediately dispossess the debtor here. Thus, we emphasize, as did the Court in *Re-Trac, supra,* that effect of a rejection of a lease per § 365(d)(4), even if followed by a granting of relief from the automatic stay per § 362(a), merely places the creditor in a position to pursue remedies under the state law of landlord and tenant to obtain possession of the premises.

█ In their Brief, the landlords point to the delays attendant in the State landlord-tenant process if they are required to follow it. However, our answer is that those delays, having been made a part of the Pennsylvania Landlord and Tenant Act, 68 P.S. § 250.101. et seq., cannot be avoided. Surely, the tenant's filing of a bankruptcy should not allow a landlord to avoid them.

The landlords, per Mr. Baliban at the hearing on August 28, 1986, and even in their Brief in support of the Motion at bar,

allege that, without knowledge of the bankruptcy filing and also without first obtaining any judgment for possession, they reacted by unilaterally shutting off the tenant's electric service. If he was unaware of the bankruptcy filing, it follows that Mr. Baliban had no reason to conclude that 11 U.S.C. § 365(d)(4) allowed him to take such actions in furtherance of a self-help eviction. Therefore, his conduct was totally without justification unless the landlords can plausibly argue that Pennsylvania law sanctions self-help evictions.

█ We must state, as strongly as we can do so, that we do not believe that the law of Pennsylvania sanctions self-help eviction, and in fact we believe this law to be quite to the contrary. Our authority for this conclusion and the principle that the Landlord and Tenant Act constitutes the sole means by which a landlord can legally dispossess a tenant are the following authorities: *Kuriger v. Cramer,* 345 Pa.Super. 595, 607–08 n. 14, 498 A.2d 1331, 1337 n. 14 (1985); *Pollack v. Morelli,* 245 Pa.Super. 388, 392–93, 369 A.2d 458, 460–61 (1976); *Stein v. McGinley,* 123 Pa.Super. 122, 127, 186 A. 231, 233 (1936); and *Wofford v. Vavreck,* 22 D & C.3d 444, 450–52 (Crawford Co.C.P.1981). We have no doubt that shutting off the utilities of a tenant is among the self-help remedies which the Pennsylvania courts would strongly condemn. *See, e.g., Smiley v. Cardin,* 655 S.W.2d 114 (Mo.App.1983) (tenant awarded $600.00 compensatory damages and $10,000.00 punitive damages against landlord who removed appliances); *Hutchins v. Novay,* NO. GD 26159 of 1975 (Alleg.Co.Pa., C.P., Opinion and Order filed June 7, 1977) (tenants subjected to removal of doors, windows, and utility termination awarded over $5,000.00 damages). We therefore emphasize that the landlords' conduct in shutting off the tenant's electric service was totally illegal, and our mere direction that this service be restored was the mildest possible sanction.

The touchstones of bankruptcy proceedings are that the debtor receive a "breathing spell" after the filing and that, if distri-

bution of his assets is the only sensible resolution, that such distribution take place in an orderly fashion, in which all creditors whose interests may be impaired, including landlords, are treated equally and without preference. Self-help actions by creditors, particularly creditors so critical to debtors' well-being as landlords of realty used by debtors as their residence or the source of their livelihood, are anathema to this concept. Such actions therefore cannot be permitted, and this Court must take great pains to emphasize that it will deal swiftly and firmly with such conduct. For this reason, we shall not vacate our Order of August 28, 1986, but shall instead soundly reaffirm it.

For all of the reasons set forth herein, we are constrained to deny the landlords' Motion, and will do so in an accompanying Order.