In re Ernest N. DAMIANOPOULOS,
d/b/a Corinthian Cafe, Debtor.

Bankruptcy No. 87–01132.

United States Bankruptcy Court,
N.D. New York.

Feb. 5, 1988.

McAuliffe & McAuliffe, P.C., Syracuse, N.Y., for HRR Properties Co.; Robert D. McAuliffe, of counsel.

Scott, Sardano & Pomeranz, Syracuse, N.Y., for debtor; Roger Scott, of counsel.

Warren V. Blasland, Syracuse, N.Y., Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter comes before the Court on the motion of HRR Properties Company ("HRR"), pursuant to § 362(d) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1987) ("Code"), to lift the automatic stay on the non-residential real property it owns and leases to Ernest N. Damianopoulos, d/b/a Corinthian Cafe ("Debtor"). A preliminary hearing pursuant to Code § 362(e) was conducted in Utica on December 7, 1987 and a final evidentiary hearing, also in Utica, took place on January 4, 1988. The final hearing was concluded on January 21, 1988, when counsel for the Debtor submitted a reply memorandum to HRR's post-trial memorandum of law. Accordingly, HRR's request for relief under Code § 362(d) was submitted for decision January 21, 1988.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction by virtue of 28 U.S.C.A. §§ 1334(b) and 157(a) (West 1979 & Supp.1987). This is a core proceeding, 28 U.S.C.A. §§ 157(b)(1) and (b)(2)(G), rendered in accordance with Rules 9014, 7052 and 4001(a) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

## FACTS

Debtor filed for relief under Chapter 13 of the Code on August 10, 1987. From a review of Debtor's Petition, Statement and Schedules ("Petition"), it appears that he lives in Syracuse with his wife, who does not work, and two children, Maria and Dimitri, ages thirty and twenty-two, respectively. Over the past three years, Debtor has earned income from the Corinthian Cafe ("Cafe"), a luncheonette he has owned and operated in Syracuse, New York since 1984, research and teaching duties at a local university and room and board collected from his daughter and a boarder in his home.

Debtor's individual filing stayed a summary eviction proceeding instituted by HRR in the City Court of Syracuse, New York to gain possession of the premises on which he operates the Cafe. In his Petition, Debtor listed this action and appeared to mark June 7, 1987 as the last date he made a monthly rental payment of $250.00. The Debtor also included HRR as an unsecured creditor holding a disputed claim of $900.00 for rent under this business lease.

The lease in question was executed on March 6, 1984 between the Debtor and HRR for the rental of some 630 square feet at 238 Harrison Street[1] and was expressly for restaurant use only. It provided for a term of five and one-half years from March 1, 1984 to August 31, 1989 at a monthly rate of $200.00 for the first six months and $250.00 for the remaining five years with additional charges of pro rata building taxes and insurance. Rental payments not made on the first day of each calendar month were subject to a fifty dollar late charge. Debtor was obligated to perform and bear the costs of all work necessary to ready the premises for his Cafe and pay the cost of providing access to restrooms located on the premises and specific work that HRR was to perform. Rent abatement and liquidated damages

1. There appears to be a discrepancy as to the exact address of the leased premises. In contrast to the address on the lease agreement, HRR's moving papers state the address as 250 Harrison Street, while the Debtor lists the address as 236 Harrison Street in his Petition. The Court will treat the address on the lease agreement as bearing the correct number.

were provided for in the event that the work HRR was required to perform prevented the Debtor from being open for business or was not completed within six months of the lease's execution. In addition, the lease agreement set out eight different categories of events which constituted default, including bankruptcy and the failure to timely pay monthly rent and cure without notice from HRR. The lease also created a month to month holdover tenancy at double the rent if the Debtor continued in possession of the premises despite lease expiration or forfeiture.

In his Petition, Debtor estimated his personal monthly expenses at $1,251.00 and his monthly net income at $1,739.00, of which $1,189.00 was generated by the Cafe. He indicated that the Cafe also supplied his family with food. The Debtor's original plan filed on August 27, 1987, did not list any executory contracts to be rejected, and stated the following: "The debtor shall remain in possession of all property at all times under the Plan." After a secured creditor objected to the confirmation of the plan, the Debtor filed an amended plan October 30, 1987 in which the only change was an increase in the amount of monthly plan payments.

On November 23, 1987, HRR filed the instant motion seeking an order either lifting the automatic stay to allow it to proceed in City Court, or terminating the Debtor's lease rights and establishing a claim of $3,927.05. Affidavit of Charles W. Rich, general partner of HRR (Nov. 18, 1987). HRR alleged that the lease terminated through the Debtor's pre-petition defaults and the notice of termination it sent out on May 23, 1987. *Id.* at Exhibit B. These allegations apparently formed the basis of HRR's eviction action commenced on July 6, 1987. On his own accord, the presiding City Court Judge, the Hon. Langston C. McKinney, stayed the eviction action on September 14, 1987 due to the Debtor's bankruptcy filing. HRR also claimed the Debtor's holdover status, at double the lease's fixed monthly rent as set forth in the lease, and asserted that the Debtor's bankruptcy filing, which "terminates the

estate created in tenant hereby", constituted an additional ground of default. *Id.*

At the preliminary hearing on December 7, 1987, counsel for the Debtor asserted that there was no contest of factual allegations, no legal cause and that the lease was improperly terminated. In response, counsel for HRR stated that there was no lease because of pre-petition defaults. At the final evidentiary hearing on January 4, 1988, both attorneys stipulated into evidence all of the papers submitted in the City Court eviction action and neither called any witnesses. The stipulated papers recited a volley of charges between the Debtor and HRR concerning the interpretation of the lease agreement and the breach of respective landlord and tenant obligations arising thereunder, dating back to August 1, 1986.

Subsequently, HRR reiterated that the lease terminated June 1, 1987 due to the Debtor's failure to timely pay the fixed monthly rent, thus precluding any lease assumption under bankruptcy law. Petitioner's (Creditor's) Memorandum of Law (received and filed Jan. 1988). In the alternative, HRR asked the Court to defer its decision until the completion of the state court action if it determined that there were issues of lease termination. *Id.*

In response, the Debtor maintained that the lease had neither expired nor been terminated. Debtor's Memorandum of Law (received and filed Jan. 21, 1988). Even assuming termination, he asserted that the process was not complete and immune from reversal, nor was a final decision ever issued by the City Court. *Id.* The Debtor further stated that HRR's attorney was holding its post-petition rental payments, contrary to HRR's pre-petition behavior. *Id.*

Debtor's second amended plan was denied confirmation in this Court's Memorandum–Decision dated January 21, 1988.

## ISSUE

Whether HRR is entitled to a vacating of the automatic stay, pursuant to Code § 362(d), to enable it to obtain possession

of the non-residential real property it leases to the Debtor?

## DISCUSSION

■ The automatic stay is triggered by the filing of a bankruptcy petition and continues until certain property is no longer property of the estate and the earlier occurrence of the closing or dismissal of the case or the denial or granting of a discharge. Code §§ 362(a) and (c) and 541. Subject to certain exceptions, Code § 362(b), the stay operates to protect the debtor or the property of the estate from almost any type of formal or informal action. Code § 362(a). *See also* King, 2 COLLIER ON BANKRUPTCY ¶ 362.04 (15th ed. 1987); *Bregman v. Meehan (In re Meehan)*, 59 B.R. 380, 382–383 (E.D.N.Y.1986). Thus, if the Court concludes that the Debtor has no possessory interest in the Cafe lease or that said lease is not property of the estate, the automatic stay does not affect it. This would be true regardless of whether the lease terminated pre or post-petition and would effectively render HRR's motion moot. Code §§ 541(b)(2) and 362(b)(10). *See also Town of Islip v. Northeastern Int'l Airways, Inc. (In re Northeastern Int'l Airways, Inc.)*, 56 B.R. 247, 249 (S.D. Fla.1986).

■ The Court finds Code § 365(d)(4), which applies "in a case under any chapter of this title", dispositive of the instant motion. *See In re Aneiro*, 72 B.R. 424 (Bankr.S.D.Cal.1987); *In re Adams*, 65 B.R. 646 (Bankr.E.D.Pa.1986); *In re Dulan*, 52 B.R. 739 (Bankr.C.D.Cal.1985); *In re Independence Village, Inc.*, 52 B.R. 715, 722 (Bankr.E.D.Mich.1985). *See also* Code § 1322(b)(7); *In re Meehan, supra* 59 B.R. at 382–383; 2 COLLIER, *supra*, ¶ 365.03 at 365–30 to 365–32. *Contra In re Dodd*, 73 B.R. 67 (Bankr.E.D.Cal.1987).

At this point in time, the Cafe lease is not property of the estate nor does the Debtor have any interest in it since it has been rejected by operation of law under Code § 365(d)(4). This occurred when the Debtor did not move to assume or reject it by October 9, 1987, sixty days after his Chapter 13 filing. Fed.R.Bankr.P. 6006.

*See also In re O.P. Held, Inc.*, 77 B.R. 388, 390–391 (Bankr.N.D.N.Y.1987).

Even if something less than a motion was required under Code § 365(d)(4), the Debtor's general statement in his original plan—the only "action" he took regarding the lease—did not constitute the clear, unequivocal, affirmative and specific act of assumption required. *See By–Rite Distributing, Inc. v. Brierley (In re By–Rite Distributing, Inc.)*, 55 B.R. 740, 742 (D.Utah 1985). *See e.g. In re O.P. Held, Inc., supra*, 77 B.R. at 388 (lawyer's statement that debtor would assume lease does not equal assumption); *In re BDM Corp.*, 71 B.R. 142 (Bankr.N.D.Ill.1987) (debtor's statement at Code § 341 meeting that he would honor all leases and the fact that he was keeping payments current does not constitute assumption); *Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.)*, 60 B.R. 878 (Bankr.9th Cir.1986) (ongoing discussions between debtor and landlord with respect to assignment, sublease and purchase does not equal assumption); *In re Spats Restaurant & Saloon*, 64 B.R. 442 (Bankr.D. Nev.1986) (debtor's conduct in introducing to lessor new tenant and discussing with tenant and lessor past problems, future plans and lease transfer does not equal assumption); *In re Re–Trac Corp.*, 59 B.R. 251 (Bankr.D.Minn.1986) (debtor's telephone conversation wherein he communicated intention to continue operating out of leased premises coupled with erratic rental payments does not equal assumption). *But see In re Aneiro, supra*, 72 B.R. at 424 (debtor's plan, filed approximately thirty days after Chapter 13 filing, satisfied Code § 365(d)(4) by providing for the assumption of non-residential lease and motion to assume lease made when notice of plan served on shopping center owner).

■ Hence, the issue of pre-petition termination of the Cafe lease properly remains a subject for the state court, where it was originally brought. *Intellitek Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.)*, 74 B.R. 766, 771 (W.D.N.Y.1987) (discussing *Northern Pipeline Co. v. Marathon Pipe Line Co.*,

458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1981)). This is so because the determination of pre-petition lease termination is a question of the law of the jurisdiction where the property is located—local state law. *In re Sudler*, 71 B.R. 780, 785 (Bankr.E.D.Pa.1987) (and cases cited therein). *See also Beauchamp v. Graham (In re Graham)*, 14 B.R. 246, 248 (Bankr.W.D. Ky.1981) (considerations of judicial economy, comity and state court expertise encourage state adjudication of state-created rights).

■■■ The debtor mentions HRR's alleged current post-petition acceptance of monthly rental payments in his Memorandum of Law presumably to raise a waiver defense to the rejection under Code § 365(d)(4). This "contention" must be dismissed on both evidentiary and statutory grounds. First, there is a complete absence of proof in the record as to the post-petition payment of rent. Second, it is clear that the lessor has no affirmative duty to seek lease rejection on the expiration of time since Code § 365(d)(4) is self-executing. *See In re Re–Trac Corp., supra*, 59 B.R. at 258.

■■■ Furthermore, the "test for waiver rests on a determination of the intentions of the party waiving the right." *Id.* (citing to 28 Am.Jur.2d Estoppel and Waiver § 160 (1966)). *See also In re Spats Restaurant & Saloon, supra*, 64 B.R. at 445–446; *In re T.F.P. Resources, Inc.*, 56 B.R. 112, 116 (Bankr.S.D.N.Y.1985). The waiver inquiry focuses "on the landlord's intent manifested by his acts." *In re Fosko Markets, Inc.*, 74 B.R. 384 (Bankr.S.D.N.Y.1987). HRR's letters and statements to the Debtor in April and May 1987 (Creditor's Exhibits 3–7) chronicling purported defaults from August 1986, the eviction suit it commenced and the instant action clearly demonstrate its intention to remove the Debtor from the premises and not waive any of its

lease rights. Moreover, while HRR's lack of reliance on Code § 365(d)(4) in its moving papers is surprising,[2] it does not dilute the manifest intention HRR indicates to eject the Debtor from the leased premises.

In addition, Code § 365(d)(4) was enacted with Code § 365(d)(3) as part of a statutory scheme to protect landlords. *See In re Fosko Markets, Inc., supra*, 74 B.R. at 388; *In re PCH Associates*, 804 F.2d 193, 199–200 (2d Cir.1986). Code § 365(d)(3) explicitly requires rental payments "until such lease is assumed or rejected" and states that "[a]cceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."

There is a split of authority concerning the applicability of waiver to subsections (3) and (4) of Code § 365(d). *Compare In re T.F.P. Resources, Inc., supra*, (literal interpretation of Code § 365(d)(3) supports waiver demonstrated by acceptance of rent beyond sixty days with knowledge of pending bankruptcy case) *with In re Re–Trac Corp., supra*, (given purpose of 1984 amendments to Code § 365(d), Code § 365(d)(3) applies to state law and other Code remedies and waiver of Code § 365(d)(4) is impossible once lease is deemed rejected). However, this is a conflict the Court need not resolve in the case at bar since the pleadings and the record are devoid of any possible facts that could constitute waiver.

In sum, the Court finds waiver of Code § 365(d)(4) inapplicable based on the existing record.

■■■ The Court is now left to fashion the relief to which HRR is entitled. HRR had sought the termination of the automatic stay to allow it to continue its eviction action to recover possession of the premises and, in the alternative, asked for the termination of the Debtor's rights in the

---

**2.** The Court notes with great unease the provisions of the lease at issue, embraced by HRR in its moving papers, setting forth bankruptcy as one category of default. Under Code § 541(c)(1), "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement ... that is conditioned on the insolvency or financial condition of the debtor, on the commencement

of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of a debtor's interest in property." *See also* Code § 365(e)(1). Clearly, this kind of default is prohibited under the Code.

**8**

lease and a claim in the amount of almost $4,000.00.

For the reasons discussed, there is presently no automatic stay constraining HRR from proceeding with its eviction action. Code § 362(b)(10). However, this Court is also authorized under Code § 365(d)(4) to order the immediate surrender of the lease's non-residential real property to the lessor in the event of rejection, without resorting to state law. *See In re O.P. Held, Inc., supra,* 77 B.R. at 391; *In re Fosko Markets, Inc., supra,* 74 B.R. at 390; *Ridgeview Lincoln Mercury, Inc. v. Hurst Lincoln–Mercury, Inc. (In re Hurst Lincoln–Mercury, Inc),* 70 B.R. 815, 817 (Bankr.S.D.Oh.1987). *Contra In re Adams, supra,* 65 B.R. at 649. Pursuant to Code § 365(d)(4), the Court orders such surrender within thirty (30) days of the entry of this Order.

HRR's request regarding the setting of its claim is inconsistent with this Order inasmuch as it relates to the Debtor's post-petition liability under the lease. Code § 365(d)(3) controls and provides the lessor with the payment of sixty days' rent, at the lease rate, for the sixty-day period following the filing. *Accord In re O.P. Held, Inc., supra,* 77 B.R. at 391. Since it is alleged, without dispute, that the fixed monthly rent under the lease was $250.00, HRR is entitled to $500.00, plus any applicable building charges, and HRR is also entitled to the reasonable value of the use and occupancy of the Cafe premises from the sixty-first day after the Debtor's filing to the date of the surrender of the premises. This two-fold relief, however, is only available if the Syracuse City Court determines that the lease did not terminate pre-petition. Should the City Court find the lease terminated pre-petition, HRR is then entitled to the reasonable value of the use and occupancy of the Cafe premises from the date of filing to the date of surrender. All amounts relating to the use and occupancy of the premises post-petition are to be reduced by any monies the Debtor might have paid in post-petition rent. With regard to the amounts HRR claims accrued pre-petition, that is necessarily a matter of state law and the Court defers to the expertise of Judge McKinney. HRR is enti-

tled to file any claims arising either out of the eviction action against the Debtor or this proceeding within thirty (30) days after the date of entry of the City Court judgment. Fedr.R.Bankr.P. 3002(c).

CONCLUSIONS OF LAW

Accordingly, it is hereby

ORDERED:

1. HRR's motion to lift the automatic stay pursuant to Code § 362(d) is denied as moot.

2. The lease entered into by and between the Debtor and HRR on March 6, 1984 is deemed rejected by virtue of Code § 365(d)(4).

3. The Debtor shall surrender possession of the leased premises to HRR, as prescribed by Code § 365(d)(4), within thirty (30) days of the date of entry of this Order.

4. Consonant with this Order and the City Court judgment, HRR is entitled to file any claim it deems appropriate under the applicable provisions of the Code within thirty (30) days after the date of entry of the City Court judgment, pursuant to Fed. R.Bankr.P. 3002(c).