In re U.S. FAX, INC.

Civ. A. No. 90–1707.

United States District Court,
E.D. Pennsylvania.

April 25, 1990.

Gary A. Rosen, Hangley, Connolly, Epstein Chicco, Foxman & Ewing, Philadelphia, Pa., for appellant.

Michael A. Cibik, Philadelphia, Pa., for appellee.

James J. O'Connell, Asst. U.S. Trustee.

## MEMORANDUM

GILES, District Judge.

### A. *Factual and Procedural Background*

This is an appeal from a final order of the bankruptcy court entered on February 15, 1990. This court has jurisdiction to hear such appeals pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

On July 1, 1989, U.S. Fax, Inc. and lessor, Robert Morris Building Associates (Morris), entered into a commercial lease agreement whereby Morris rented office space at the monthly rate of $8,509.63. Although U.S. Fax continues in possession, it has made no lease payments since September of 1989.

On December 7, 1989, U.S. Fax filed a petition for bankruptcy under Chapter 11. On January 16, 1990, Morris moved that the lease be "deemed rejected" and that U.S. Fax (Debtor) be required to surrender possession of the premises immediately. The motion was based on 11 U.S.C. § 365(d)(4), which provides, in relevant part:

> [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

In the alternative, Morris requested administrative rent for the period the Debtor remained in possession. Morris relied on 11 U.S.C. § 365(d)(3), which provides, in relevant part:

> The trustee shall timely perform all the obligations of the debtor, ... arising from and after the order of relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected.

On February 14, 1990, the bankruptcy court held a hearing on the motion. At the hearing, the Debtor stated that it did not object to the lease being deemed rejected, but that it disagreed that surrender was required. The following day, the bankruptcy court granted the motion to the extent of deeming the lease rejected. However, it declined to order that the Debtor surrender possession. It also declined to order that the Debtor pay administrative rent. The court relied on its earlier decision in *In re Adams*, 65 B.R. 646 (Bankr.E.D.Pa.1986), ruling that, to obtain possession of the premises, Morris would first have to move for relief from the automatic stay and then pursue its remedies in state court. The court stated that:

Neither rejection of the lease, nor the failure of the Debtor to make payments, however, justify denial of the Debtor's state-law rights ... A motion seeking [relief from the automatic stay] and thereafter proceedings in accordance with applicable state law must precede a directive that the Debtor vacate the premises.

Morris appeals the order of the bankruptcy court, arguing that the court misinterpreted 11 U.S.C. § 365. Because the appeal concerns a question of law, this court's review is plenary. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66 (3d Cir.1989). For the reasons which follow, the bankruptcy court's order is reversed.

### B. *Discussion*

#### 1. The Debtor's Brief

■ The debtor has submitted a letter to the court which purports to be a reply brief. This "brief" is untimely and was never filed of record. Accordingly, I will not consider it.[1]

#### 2. The Requirements of 11 U.S.C. § 365(d)(4)

■ As discussed above, 11 U.S.C. § 365(d)(4) requires that when a lease for nonresidential property is "deemed rejected, ... the trustee shall immediately surrender such nonresidential property to the lessor." The bankruptcy court ruled that the Debtor's lease with Morris was "deemed rejected," but declined to order surrender. The court relied on its earlier decision in *In re Adams*, 65 B.R. 646 (Bankr.E.D.Pa.1986). There, the bankruptcy judge had opined that the surrender requirement of 11 U.S.C. § 365(d)(4) was in conflict with the automatic stay provisions of the bankruptcy code. *Id.* at 648–9. *See* 11 U.S.C. § 362(a)(3). The automatic stay protects the debtor's property from actions by creditors. *Id.*

However, no such conflict was found by the bankruptcy court in *In re Damiano-*

---

1. Even if the brief were considered, it does not appear that it would be helpful. The debtor's argument is less than one page in length, and confusingly refers to the appellant as "appellee" on several occasions.

*poulos,* 93 B.R. 3 (Bankr.N.D.N.Y.1988), where it was held that the automatic stay provisions do not preclude ordering surrender under section 365(d)(4). That court reasoned that when a nonresidential lease is "deemed rejected," the debtor's leasehold is "no longer property of the estate." *Id.* at 6.[2] I find this reasoning persuasive.

In *In re Adams,* contrary to substantial authority, the bankruptcy court stated that "it is inconceivable that Congress would intend to place in the Bankruptcy Code a provision which would allow creditors to short-circuit established state law landlord-tenant procedures." 65 B.R. at 649. A number of courts have concluded that Congress did so intend. *See, e.g., In re Damianopoulos,* 93 B.R. 3 (Bankr.E.D.N.Y. 1988); *In re Giles Associates, Ltd.,* 92 B.R. 695 (Bankr.W.D.Tex.1988); *In re O.P. Held, Inc.,* 77 B.R. 388 (Bankr.N.D.N.Y. 1987); *In re Fosko Markets, Inc.,* 74 B.R. 384 (Bankr.S.D.N.Y.1987); *In re Hurst Lincoln–Mercury, Inc.,* 70 B.R. 815 (Bankr.S.D. Ohio 1987); *In re Bernard,* 69 B.R. 13 (Bankr.D. Hawaii 1986); *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr.C.D.Cal.1985), *aff'd,* 66 B.R. 121 (Bankr. 9th Cir.1986), *rev'd on other grounds,* 831 F.2d 848 (9th Cir.1987).

Indeed, neither the language of section 365(d)(4) nor the legislative history suggests that Congress meant for creditors to pursue state-law remedies. This subsection was added to the Bankruptcy Code as part of the Amendments of 1984. A sponsor explained the Amendments as "measures that correct problems for owners of shopping centers and their tenants, and other owners of real estate, whose leases are tied up in reorganization proceedings under chapter 11 of the Bankruptcy Code." Statement by Senator Robert J. Dole, on House Conference Report No. 98–882, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad. News 576, 586, 587. The Amendments were further explained as follows:

The first problem which this bill would remedy is the long-term vacancy or partial operation of space by a bankrupt tenant. Although in a chapter 7 case the bankruptcy code presently requires that the trustee decide whether to assume or reject an unexpired lease with 60 days after the bankruptcy petition is filed, there is no deadline for this decision in a chapter 11 case. Because of the unprecedented number of bankruptcy cases and the consequent delays in the bankruptcy courts, tenant space has been vacated for extended periods of time before the bankruptcy court forced the trustee to decide whether to assume or reject the lease. During this time, the other tenants of the shopping center are hurt because of the reduced customer traffic in the shopping center. Tenants and landlords in other nonresidential structures have encountered similar problems.

The bill would lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject nonresidential real property lease within 60 days after the order for relief in a case under any chapter. This time period could be extended by the court for cause, such as in exceptional cases involving large numbers of leases.... If the lease is not assumed or rejected within this 60–days period, or any additional period granted by the court, the lease is deemed rejected and the trustee must immediately surrender the property to the lessor.

Statement by Senator Orrin G. Hatch, on House Conference Report No. 98–882, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad. News 590, 598–99.[3]

Under the Supremacy Clause,

Where Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way. It is equally well-settled, however, that state

---

**2.** Indeed, the statute affords the debtor the opportunity to assume the lease and thereby retain the stay's protection.

**3.** This statement refers specifically to the problems caused by tenant vacancies, while here, the

Debtor remains in possession. Nevertheless, the legislative history supports Morris' position. Above all, Congress meant to ensure that debtors accept or reject their leases within a sixty-day period, a concern that is at stake here.

laws are suspended only to the extent of actual conflict with the bankruptcy system provided by Congress, so that in the absence of any conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights.

*Johnson v. First National Bank of Montivedo, Minn.*, 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

Requiring creditors to pursue state-law remedies would frustrate the language and purpose of section 365(d)(4) in several ways. The statute requires, when a lease is deemed rejected, that surrender be "immediate." Requiring the creditor to initiate state-court proceedings would defeat the statutory mandate. *Cf. In re Fosko Markets, Inc.*, 74 B.R. 384, 391–92 (Bankr.S.D.N.Y.1987) (denying stay pending appeal because statute requires immediate surrender). Also, the statute requires, by use of the word "shall," surrender of the premises when the lease is "deemed rejected" regardless of whether the debtor has breached the lease agreement. Presumably, a state's laws would require eviction only if the lease agreement were found to have been breached. Consequently, "if debtor is current with its rent, ..., [the lessor] could not succeed in an eviction. The net result then would be that the last clause of § 365(d)(4) would be rendered meaningless." *In re Hurst Lincoln–Mercury, Inc.*, 70 B.R. 815, 817 (Bankr.S.D. Ohio 1987).

In summary, the language and legislative history of section 365(d)(4) demonstrate that Congress did not intend for creditors to pursue state-law remedies and that requiring creditors to pursue such remedies would frustrate the statute's purpose. Accordingly, that portion of the bankruptcy court's order which denied immediate surrender is reversed.

### 3. The Rent Requirements of 11 U.S.C. § 365(d)(3)

The bankruptcy court declined to award administrative rent under 11 U.S.C. § 365(d)(3). This subsection provides in relevant part:

The trustee shall timely perform all the obligations of the debtor, ... arising from and after the order of relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected.

A sponsor of the Bankruptcy Amendments of 1984 explained the subsection as follows:

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

Statement by Senator Orrin G. Hatch, on House Conference Report No. 98–882, June 29, 1984, *reprinted in* 1984 U.S.Code Cong. & Ad. News 590, 599.

Courts have consistently held that section 365(d)(3) "provides the lessor with the payment of sixty days' rent, at the lease rate, for the sixty-day period following the filing." *In re Damianopoulos*, 93 B.R. 3, 8 (Bankr.N.D.N.Y.1988). *See e.g., In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re S & F Concession, Inc.*, 55 B.R. 689 (Bankr.E.D.Pa.1985); *In re O.P. Held, Inc.*, 77 B.R. 388 (Bankr.N.D.N.Y.1987); *Matter*

*of Longua,* 58 B.R. 503 (Bankr.W.D.Wis. 1986); *Matter of Barrister of Delaware, Ltd.,* 49 B.R. 446 (Bankr.D.Del.1985). *Contra In re Cardinal Industries, Inc.,* 109 B.R. 738, 741 (Bankr.S.D.Ohio 1989) ("[o]nce the lease has been rejected, ... the contract rate is not necessarily determinative of the amount of the administrative rent claim").

Because the statutory language, legislative history, and cases interpreting the statute are clear, Morris is entitled to sixty days' rent at the lease rate, totalling $17,-019.26.[4] Accordingly, that portion of the bankruptcy court's order which declined to award such rent is reversed.

### 4. Additional Rent After the Sixty–Day Period

■ Morris argues that it is entitled to additional rent for the Debtor's continuing possession. Morris concedes that section 365 makes no provision for such rent after the sixty-day period described in § 365(d)(3) has expired. Nevertheless, Morris contends that it is entitled to relief under section 364(c), which provides:

> If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of this title ...

According to Morris, the bankruptcy court's refusal to order surrender had the same effect as if the court had "authorized the obtaining of credit" under section 364(c). Morris argues that it is therefore entitled to "superpriority" status under section 364(c)(1) for all rent owed.

This argument is unpersuasive. The bankruptcy court did not proceed under § 364(c). The Debtor did not ask the bankruptcy court to authorize the obtaining of credit. Neither did the Debtor seek to prove that it had been unsuccessful in obtaining credit. *Cf. In re Reading Tube Industries,* 72 B.R. 329 (Bankr.E.D.Pa. 1987). Indeed, at one point during the proceedings, the Debtor stated that it intended to cure arrearages and keep current on post-petition rent payments. Record on Appeal, Exhibit Seven (Debtor's Answer to Morris' Motion). Consequently, section 364(c) is inapplicable, and Morris is restricted to the remedies described above.

### ORDER

AND NOW, this 25th day of April, 1990, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The bankruptcy court's ruling which declined to order that the Debtor immediately surrender the premises is REVERSED.

2. The bankruptcy court's ruling which declined to award rent to Morris for a sixty-day period is REVERSED.

3. The bankruptcy court's ruling which declined to award rent to Morris for the period after sixty days is AFFIRMED.

4. The above-captioned matter is REMANDED to the bankruptcy court for further proceedings in accordance with this opinion.

---

4. At the same time, because of the "presumption that debtor's limited resources will be distributed equally among creditors," *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bkrtcy.E.D.Pa.1987), the award to Morris is not entitled to superpriority status. *Id.* "Had Congress intended to create a super-priority for subsection 365(d)(3), it would have done so by express statutory language." *Id.; In re Cardinal Industries, Inc.,* 109 B.R. 738, 742 (Bankr.S.D. Ohio 1989); *In re The Tandem Group,* 61 B.R. 738, 742 (Bankr.C.D.Cal.1986); *In re United West, Inc.,* 87 B.R. 138, 140 (Bankr.D.Nev.1988). Accordingly, the priority of Morris' claim is "equal to that of other claimants with priority under 11 U.S.C. § 507(a)(1)," 109 B.R. at 742, and the award to Morris is "subject to the trustee's right to seek recovery of all or part of the payment in the event all other administrative expense claimants are not paid in full." 73 B.R. at 973.