**In re Miriam MORALES, Debtor.**

**Miriam MORALES, Plaintiff**

**v.**

**HOUSING AUTHORITY OF the CITY OF ALLENTOWN and Frederick L. Reigle, Defendants.**

**Bankruptcy No. 84–03013 T.**
**Adv. No. 84–1256.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 18, 1985.

---

David A. Scholl, Allentown, Pa., for plaintiff.

William H. Fitzgerald, Allentown, Pa., for the Housing Authority of the City of Allentown.

Frederick L. Reigle, Reading, Pa., trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this adversary proceeding, the Chapter 13 debtor-plaintiff seeks a preliminary injunction enjoining defendant Housing Authority of the City of Allentown ("HACA") from preventing her from re-occupying the premises (or comparable premises) which HACA had formerly leased to her pursuant to their lease agreement of January 18, 1980. For the reasons hereinafter given, we shall grant preliminary injunctive relief to the debtor.[1]

The present controversy stems from a landlord and tenant action brought by HACA against the debtor in a state District Justice Court. On August 2, 1984, the District Justice entered judgment in this action in favor of HACA and against the debtor in the amount of $123.13. In addition, HACA was granted possession of the premises leased by it to the debtor since January 18, 1980. On August 23, 1984, the District Justice, at HACA's request, issued to the Constable an Order for Possession of the subject premises. The Constable

served the Order for Possession upon the debtor on August 23, 1984 at 6:15 P.M. The Order for Possession contained a notification to the debtor which stated, in essence, that if she did not vacate the premises within 15 days after the date of the notice, the Constable was legally authorized to use such force as necessary to enter the premises and eject the debtor therefrom.

On September 7, 1984, at approximately 4:00 P.M., the Constable executed the Order for Possession by securing the premises in the debtor's absence. Later on September 7, 1984, the debtor reentered the premises by gaining entrance through a basement window. After having learned from HACA of the debtor's reentry, the Constable, on September 11, 1984 at 3:45 P.M., again secured the subject premises in the debtor's absence.

The debtor filed her Chapter 13 bankruptcy petition on September 11, 1984 at 3:55 P.M., listing HACA as an unsecured creditor.

On September 12, 1984, the debtor notified HACA of her bankruptcy filing and demanded reentry into the premises. This demand was refused by HACA. The debtor, with HACA's permission, removed all of her personal property from the premises on September 12, 1984.

On September 11, 1984, subsequent to the aforementioned re-securing of the premises, the debtor moved into the home of another of HACA's tenants, where, with HACA's permission, she still remains. However, everyone concerned agrees that this is not a satisfactory permanent living arrangement. At all times relevant herein, the debtor has resided, and continues to reside, with her seven-year old daughter.

In September, 1984, following the re-securing of the premises, HACA re-rented the subject premises to new tenants taken from HACA's waiting list of approximately 600 applicants for public housing.

---

**1.** This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

Subsequently, the debtor commenced the present adversary proceeding by filing a complaint against HACA and the bankruptcy trustee. The complaint essentially alleges that HACA wrongfully dispossessed the debtor from the subject premises and that, following the debtor's bankruptcy filing, HACA's continuing refusal to permit the debtor to re-occupy the premises constitutes a violation of the automatic stay imposed by section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), and renders HACA in contempt of our Order imposing the automatic stay. The complaint further alleges that HACA's actions render HACA liable to the debtor pursuant to 42 U.S.C. § 1983 as a deprivation, under color of state law, of the debtor's rights secured by the Bankruptcy Code. The complaint requests relief in the form of, *inter alia,* monetary damages and attorney fees. The complaint also requests that HACA "be enjoined from preventing the Plaintiff from regaining possession of her premises and from taking any further action against her."

Pursuant to her complaint, the debtor has filed her instant motion for a preliminary injunction, in which she requests an Order enjoining HACA from taking any action to prevent the debtor from occupying the subject premises or comparable premises pending further Order of this Court. At the hearing on the debtor's motion for a preliminary injunction, all of the aforementioned facts were stipulated to by the parties.

■ It is well-established that, in order to be entitled to preliminary injunctive relief, the moving party must generally show (1) a reasonable probability of eventual success on the merits in the litigation and (2) that the movant will be irreparably injured *pendente lite* if such relief is not granted. The Court should also take into account, when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public

interest. *Constructors Association of Western Pennsylvania v. Kreps,* 573 F.2d 811, 815 (3rd Cir.1978); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–920 (3rd Cir.1974); *In re Markim, Inc.,* 12 B.R. 583, 585 (Bankr.E.D.Pa.1981).

In the present matter, it is undisputed that the debtor is entitled to the preliminary injunctive relief she seeks if she can show that she has a reasonable probability of ultimately succeeding on the merits of this adversary proceeding. In determining whether such a showing has been made, the parties agree that the dispositive issue is whether or not, under Pennsylvania law, the debtor had been lawfully ejected from the subject premises as of the time she filed her bankruptcy petition. If not, she has retained an interest in the premises. Such an interest would constitute property of the debtor's bankruptcy estate under section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. § 541(a)(1). Therefore, HACA's continuing refusal to allow the debtor to regain possession of the subject premises (or of comparable premises administered by HACA) following her bankruptcy filing would constitute a violation of the automatic stay of § 362(a) of the Bankruptcy Code.[2] *See In re Gambogi,* 20 B.R. 587 (Bankr.D.R.I.1982); *In re Pickus,* 8 B.R. 114 (Bankr.D.Conn.1980).

With regard to the lawfulness of the debtor's ejection, the threshold issue is whether or not the ejection of the debtor on September 7, 1984 was valid under Pennsylvania law. This issue turns upon the proper interpretation of Rule 519 (Forcible Entry and Ejectment) of the Pennsylvania Rules of Civil Procedure Governing Actions and Proceedings before District Justices (hereinafter "District Justice Rules").

Rule 519 states in relevant part:

"If, after fifteen (15) days after the service of the order for possession, the defendant ... remains on the real property, the officer executing the order for

---

**2.** HACA has not filed an action for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

possession shall ... eject the defendant ... and shall deliver possession of the real property to the plaintiff or his agent."

As stated *supra,* the Constable served the Order for Possession on August 23, 1984 at 6:15 P.M. and ejected the debtor on September 7, 1984 at approximately 4:00 P.M. Thus, a period of time of 14 days and approximately 21¾ hours elapsed between service of the Order for Possession and the debtor's ejection. The parties agree that a premature ejection is legally invalid. However, they disagree as to whether the September 7, 1984 ejection was premature under Rule 519.

HACA argues that the decision of the Fayette County, Pennsylvania Court of Common Pleas in *In re Fitzgerald,* 12 Fayette Leg.J. 150 (1949), supports its position that the ejection was not premature. In *Fitzgerald,* the Court directed that Mr. Fitzgerald be given ten days notice of an inquisition into his competency to handle his person and affairs. The inquisition was scheduled for July 29, 1948 at 1:30 P.M. and Mr. Fitzgerald received notice thereof on July 19, 1948 at 3:45 P.M. The Court held that this notice was sufficient, stating at 12 Fayette Leg.J. 152:

"[T]he law takes no account of fractions of a day in computing the period of time elapsed; in order to avoid disputes it excludes the whole of the first day of the period and includes the whole of the last...."

HACA also points to Rule 203 (Computation of Time) of the District Justice Rules, which states in relevant part:

"A. When any period of time is referred to in any rule, such period ... shall be so computed as to exclude the first and include the last day of such period."

Therefore, HACA contends that August 23, 1984, the date of service of the Order for Possession, should be excluded in counting the 15 days, with August 24, 1984 thus becoming the first day of the relevant period of time and September 7, 1984, the ejection date, becoming the fifteenth day. Because, according to *Fitzgerald,* the law

takes no account of fractions of a day, HACA argues that ejection anytime on September 7, 1984 would not be premature under Rule 519 and would, therefore, be legally valid.

The debtor argues that *Fitzgerald* and Rule 203 of the District Justice Rules might be persuasive authority that the ejection was not premature if Rule 519 simply provided that an Order for Possession could be executed upon 15 days notice to the tenant. The debtor points out, however, that Rule 519 specifically states that ejection is not permissible until *after* 15 days *after* service of the Order for Possession. The use of the word "after" twice in Rule 519 demonstrates the Rule's intent, contends the debtor, that at least 15 entire days must elapse between service and ejection. Therefore, continues the debtor, the debtor's ejection could not have lawfully occurred until after 6:15 P.M. on September 7, 1984, and probably not until September 8, 1984. The debtor's position is supported by the decision of the Berks County, Pennsylvania Court of Common Pleas in *Jones v. Jones,* 35 Berks Co.L.J. 81 (1942). In *Jones,* a subpoena was "awarded" (issued) on April 11, 1942, with a return date of May 11, 1942. The statute in question directed that the subpoena "shall be returnable not less than thirty days after the award thereof." The party contending that sufficient notice had been given argued that the case was controlled by a Pennsylvania statute that was substantively identical to Rule 203 of the District Justice Rules. If April 11, 1942 were excluded from the computation of time and May 11, 1942 were included, as indicated by that time computation statute, the notice would have been valid. The Court, however, found that that statute did not apply because of the particular wording of the above-quoted subpoena return statute. Specifically, the Court held that the phrase "not less than" in the subpoena return statute meant that a period of 30 "clear" days must intervene between issuance and return. Therefore, both the dates of issuance and return must be excluded from

the computation of the 30 days, and a subpoena issued on April 11, 1942 must not have a return date earlier than May 12, 1942. Thus, the Court ruled that the subpoena did not comply with the subpoena return statute.

We believe that the following statement from 1 GOODRICH–AMRAM 2d, § 106(a), p. 40 (1977), which takes into account both the *Fitzgerald* and *Jones* cases, *inter alia,* contains an accurate summary of the law of Pennsylvania on this time computation issue:

> "It has been held that both terminal days are excluded when so many 'clear days' or so many days 'at least' are given within which to do an act, or when 'not less than' so many days must intervene. In the absence of anything showing an intention to count only 'clear' or 'entire' days, however, it is generally held that in computing the time for performance of an act or event which must take place a certain number of days before a known future day, one of the terminal days is included in the count and the other is excluded." [Footnotes omitted].

Upon consideration of all of the foregoing authority, we believe that the debtor's interpretation of Rule 519 is more reasonable than that of HACA. We believe that the specific wording of Rule 519 demonstrates an intention that at least 15 "clear" days must intervene between service of an Order for Possession and a debtor's ejection. Because September 7, 1984 was the fifteenth "clear" day in the present case, we do not believe that the debtor's ejection on that date was legally valid under Pennsylvania law.

The parties have also addressed the issue of the lawfulness of the "re-ejection" of the debtor on September 11, 1984, ten minutes before the debtor's bankruptcy filing. However, the parties have addressed this issue only in the context of a potential determination that the September 7, 1984 ejection was legally valid. Therefore, we shall not now consider this issue.

For the foregoing reasons, we conclude that the debtor has a reasonable probability of ultimately succeeding on the merits of this adversary proceeding. We further find that she will be irreparably injured, as HACA appears to concede, if she and her seven-year old daughter are not permitted to re-occupy by themselves one of the premises administered by HACA and that, as HACA also appears to concede, no other factor relevant to our consideration of preliminary injunctive relief militates significantly, if at all, against our granting of such relief.

Therefore, we shall grant to the debtor preliminary injunctive relief in the form of an Order enjoining HACA, pending further Order of this Court, from taking any action to prevent the debtor from occupying the subject premises or comparable premises administered by HACA. Pursuant to Rule 7065 of the Rules of Bankruptcy Procedure and Rule 65(c) of the Federal Rules of Civil Procedure, we find that the debtor's security deposit held by HACA is sufficient security for the issuance of our Order.