**In re TELEPHONICS, INC., Debtor.**

**Bankruptcy No. 88–10097S.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 25, 1988.

David S. Fishbone, Philadelphia, Pa., for debtor.

Nancy P. Regelin, David D. Freishtat, Martin P. Schaffer, Rockville, Md., for Lakeforest Associates.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The matters presently before us in the above-entitled case require us to consider, on one level, whether the debtor-tenant's commercial lease has been terminated; and, on the another level, what effect a determination on that issue in a state court landlord-tenant proceeding should have upon the result that we reach. While we conclude that the Debtor's position appears to have substantive merit, we are reluctant to effectively invalidate a judgment of a court of another state which has a motion to reconsider its own decision terminating the lease before it. We shall therefore grant the landlord's motion for relief from the automatic stay, but stay any execution upon the state court judgment for a ten-day period after the motion to reconsider is determined, either by the state court or by us if the state court action should be removed to our court. We shall defer ruling on the Debtor's motion to assume the lease until the issue of whether the lease has been terminated has been firmly resolved.

The instant Chapter 11 bankruptcy case was filed on January 12, 1988. The Debtor is a wholly-owned subsidiary of Ma & Pa Tel, Inc., the Debtor in Bankr. No. 85–00402K, filed in our court on February 6, 1985, (hereinafter the Debtor in that case is referred to as "the Parent").[1] The filing of the case for this Debtor was the direct upshot of our decision denying the Motion of the Parent for a Preliminary Injunction in *In re Ma & Pa Tel, Inc., Ma & Pa Tel, Inc. v. Lakeforest Associates,* Bankr. No. 85–00402K, Adv. No. 87–1085S (Bankr.E.D. Pa.Jan 6, 1988) In that decision, we refused to extend a Temporary Restraining Order (hereinafter referred to as "TRO") entered on December 29, 1987, by Chief Judge Thomas M. Twardowski, sitting as emer-gency judge in our absence. The relief granted per the TRO was an injunction preventing the Defendant-landlord (referred to hereinafter as "Lakeforest") from interfering with the use and occupancy by the Plaintiff and the Debtor as tenants of a store owned by Lakeforest in the Lakeforest Shopping Center in Gaithersburg, Maryland.

The significant issue in that proceeding was whether the Parent could obtain injunctive relief from our court to prevent an eviction when the parties to the lease in question were Lakeforest and the Debtor. The Debtor at that time was a non-debtor, a wholly-owned subsidiary of the Parent which had been created solely for the purpose of rendering the lease-tenant a Maryland corporation at the behest of Lakeforest. Since the tenant was not nominally the Parent, the latter had not filed a motion to assume the lease in its own bankruptcy case. However, in its Plan of Reorganization, filed July 9, 1986, and confirmed by us on November 25, 1987, the Parent purported to assume this lease.

On December 9, 1987, a Maryland landlord-tenant court entered a judgment for possession against the Debtor. Although it had never mentioned the bankruptcy or the purported impact of the bankruptcy as to the lease to Lakeforest previously, the Parent suddenly argued that it had assumed the lease in its Plan and that the confirmation order triggered the automatic stay, rendering the judgment for possession void. On December 15, 1987, Maryland counsel for the Debtor filed a motion to alter or amend the December 9, 1987, judgment, which was scheduled for a hearing by the Maryland court which had entered the judgment on January 13, 1988.

At the Preliminary Injunction hearing, the Parent presented evidence of its need to retain the Lakeforest store and its willingness and ability to make past and future rental payments. However, the Debtor's only proffered legal theory to support its request for relief was that this court could and should extend the automatic stay to

---

1. Since the name of this party is *Ma & Pa* Tel, Inc., it might even be more appropriate to refer to it as "the Parents."

the Debtor subsidiary on the basis of 11 U.S.C. §§ 362(a)(3) or 105. In denying relief, we stated:

> we are troubled by the [Parent's] consistent course of conduct of treating the Lakeforest lease as separate and apart from the bankruptcy, and hence assumable even when the procedure of 11 U.S.C. § 365(d)(4) had been consciously ignored, and then making an about-face when the benefits of dealing with the lease separate and apart from the bankruptcy turned sour. While we discern no intentional pattern of deception here, a decision in favor of the [Parent] would practically allow a parent-debtor with subsidiary non-debtor tenants to completely eviscerate all of the unpleasant aspects of 11 U.S.C. § 365. The particular attention directed at shoppingcenter tenants in the 1984 amendments to 11 U.S.C. §§ 365(b) and (d) indicate, whether wisely or not, a Congressional focus upon such tenants which we can scarcely ignore, given this factual setting.

> We are hence disinclined to exercise our extraordinary powers on behalf of [the Parent]. We also observe that relief for the [Parent] to preserve the lease in issue, which has an additional duration of but one year, may be forthcoming in the Maryland court, and we have no reason to suspect that this court will overlook the rather apparent equities in favor of the [Parent]. Failing there, the [Parent] would still appear to be able to preserve its tenancy by filing a bankruptcy on behalf of [the Debtor]. *See In re Sudler,* 71 B.R. 780, 785–86 (Bankr.E.D.Pa. 1987); and *In re Borbridge & DeSantis,* 66 B.R. 998, 1003 (Bankr.E.D.Pa.1986).

The statement in the last sentence of this passage came back to haunt us in the form of this bankruptcy case. Shortly after the filing, Lakeforest filed one of the matters now before us, a Motion to terminate the stay arising from the Debtor's bankruptcy, on February 16, 1988. The Debtor countered with a motion to assume its only *raison d'etre,* the Lakeforest lease, on February 23, 1988. Both matters were brought before us in a consolidated hearing on March 16, 1988. After a colloquy with counsel, we prepared an agreed order providing that the stay should remain in effect pending disposition of both motions and that the parties would simultaneously submit Briefs in support of their respective positions on or before April 11, 1988.

At the hearing of March 16, 1988, we incorporated the testimony of Jack Weinstein, the President of the Parent and the Debtor, at the January 5, 1988, hearing. He also testified again and reiterated the Parent's ability and willingness to pay all rents due and its need to retain this most profitable of its three locations to fulfill the terms of its confirmed Plan.

The Debtor also called as a witness Ann Romanczak, its Maryland district manager. Ms. Romanczak conceded that the final and fatal landlord-tenant proceeding, filed November 4, 1987, was the sixth such proceeding brought against her employer by Lakeforest concerning delinquent rental payments in 1987. However, she stated that the rent had been paid prior to entry of a judgment for possession on each prior occasion. In this instance, she testified that, as before, she obtained a check drawn for the full amount of rent and costs due as of the date of the hearing, December 9, 1987, and offered it to Lakeforest at its office in the mall about 11:00 A.M. However, apparently unlike the prior occasions, Lakeforest refused to accept it. Ms. Romanczak then went to the hearing at 1:30 P.M. that day without counsel. There, she failed to mention her tender of the rent to Lakeforest that morning to the court and apparently passively observed the entry of a judgment for possession against her employer. At or immediately after the hearing, she again offered the check to Lakeforest, by its counsel, who was present. Lakeforest's counsel took the check but apparently neither cashed it nor returned it.

The pertinent Maryland landlord-tenant law contains the following relevant provisions, at Maryland Real Property Article, Section 8–401(c), (d), (e), and (f):

§ 8–401. Failure to pay rent.

    .      .      .      .      .

    (c) Adjournment to enable procurement of witnesses; judgment in favor of

landlord; surrender of premises by tenant; effect of tender of rent.—

. . . . .

(2) If, when the trial occurs, it appears to the satisfaction of the court, that the rent, or any part of the rent, is actually due and unpaid, the court shall *determine the amount of rent due and enter a judgment in favor of the landlord for possession* of the premises. The court may also give judgment in favor of the landlord for *the amount of rent determined to be due together with costs of the suit* if the court finds that the actual service of process made on the defendant would have been sufficient to support a judgment in an action in contract or tort.

. . . . .

(5) However, *if the tenant,* or someone for him, at the trial, or adjournment of the trial, *tenders to the landlord the rent determined by the court to be due and unpaid,* together with the costs of the suit, *the complaint against the tenant shall be entered as being satisfied.*

. . . . .

(e) Tenant's right to redeem leased premises prior to eviction.—In any action of summary ejectment for failure to pay rent where the landlord is awarded a judgment giving him restitution of the leases premises, *the tenant shall have the right to redemption of the leased premises* by tendering in cash, certified check or money order to the landlord or his agent all past-due rent and late fees, plus all court-awarded costs and fees, *at any time before actual execution of the eviction order. This subsection does not apply to any tenant who has received more than three summons containing copies of complaints filed by the landlord against the tenant for rent due and unpaid in the 12 months prior to the initiation of the action* to which this subsection otherwise would apply.

(f) Appeal.—The tenant or the landlord may appeal from the judgment of the District Court to the circuit court for any county *at any time within two days from the rendition of the judgment.* The tenant, in order to stay any execution of the judgment, shall give a bond to the landlord ... (emphasis added).

No appeal was taken by the Debtor within the requisite, very brief two-day period. The filing of the motion for reconsideration on December 15, 1987, apparently effected no stay, as the court directed the sheriff to proceed with execution on December 16, 1987. Only the presence of the proceedings in, first, the Parent's bankruptcy case described at pages 313–314 *supra* and, later, this case, have permitted the Debtor to remain in possession.

Lakeforest argues that it is entitled to relief, irrespective of any equities, because the lease was terminated as soon as the Debtor failed to timely appeal from the judgment for possession. It cites a Maryland bankruptcy case, *In re Pagoda International, Inc.,* 26 B.R. 18 (Bankr.D.Md. 1982), and like authority elsewhere, for the principle that a bankruptcy cannot revive a lease which has already been terminated before the bankruptcy case was filed. *See, e.g., In re Triangle Laboratories, Inc.,* 663 F.2d 463, 467–68 (3d Cir.1981); *In re Maxwell,* 40 B.R. 231, 236 (N.D.Ill.1984); and *In re Darwin,* 22 B.R. 259, 263–64 (Bankr. E.D.N.Y.1982). Further, it is clear that a lease which has been so terminated cannot be assumed, thus eviscerating the Debtor's motion before us. *See, e.g., Maxwell, supra,* 40 B.R. at 235–36; and *In re Talley,* 69 B.R. 219, 222–23 (Bankr.M.D.Tenn. 1986). Any potential for redeeming the lease is contended to be cut off by the language of § 8–401(e) of the Maryland law quoted at page 315 *supra,* restricting a cure to only a tenant, unlike the Debtor, who has been sued for nonpayment of rent less than three times within a year. Here, the Debtor has been so sued six times in 1987 alone. Therefore, Lakeforest contends that any attempted cures are futile, and it should be awarded relief to proceed to effect its inevitable right to possession.

We have repeatedly acknowledged the validity of the general principle that a bankruptcy filing cannot revive a lease or other executory contract which has been

already terminated pre-petition. *See In re Cherry,* 78 B.R. 65, 68–69 (Bankr.E.D.Pa. 1987); *Sudler, supra,* 71 B.R. at 785; and *In re Mason,* 69 B.R. 876, 881 (Bankr.E.D. Pa.1987). However, we also noted in *Sudler, supra,* 71 B.R. at 785–86, that, under applicable Pennsylvania law, a lease is not "terminated" when the tenant fails to pay rent due until the tenant is physically evicted, rather than upon the entry of a judgment for possession. This is because, under Pennsylvania common law and court rule, a tenant retains a right to cure any rental delinquency and preserve the tenancy until the moment of actual valid and complete eviction of the tenant. *Id.* Although part of the explanation for this result may be a strong state policy of preventing eviction of families from their residences, *see In re Fox, Fox v. Hill,* 83 B.R. 290, 295 n. 1, 298, 301–02 (Bankr.E.D.Pa. 1988), clearly the same principle also applies as to Pennsylvania commercial leases. *See Borbridge & DeSantis, supra,* 66 B.R. at 1002–03 & n. 11 (Bankr.E.D.Pa.1986) (FOX, J.). Further, as the decision in *In re Morales,* 45 B.R. 314, 316–17 (Bankr.E.D. Pa.1985) (TWARDOWSKI, J.), *aff'd,* C.A. No. 85–1159 (E.D.Pa.April 25, 1985), teaches, even if a debtor is physically evicted pre-petition, the debtor may be restored to possession if the state court proceedings were defective.

Under Pennsylvania law, therefore, this would be a relatively easy case, and we would clearly be inclined to allow the Debtor to cure the delinquency, assume the lease, and deny the landlord's stay-relief motion. However, it is argued by Lakeforest that the law of Maryland, as set forth at page 315 *supra,* is distinct from that of Pennsylvania. Indeed in Maryland, the tenant is limited to two post-judgment cures of judgments for possession due to non-payment of rent per year, while in Pennsylvania there is no limit on the number of such post-judgment cures. However, irrespective of that distinction, under the facts presented here, the Debtor appears to have a fairly solid foundation for arguing that the lease was not validly terminated under state law. The principle contention is, similar to that recognized in *Morales, supra,* that the purported termination of the lease by an act *generally*

unequivocally effective is not effective *here* because the act was committed invalidly.

The testimony of Ms. Romanczak indicates that she tendered the full rent and costs due to Lakeforest prior to the entry of judgment and, indeed, prior to the hearing. Under § 8–401(c)(5), this act should have resulted in a satisfaction of the complaint. Especially when punctuated by her re-tendering of the full rent and costs to Lakeforest's counsel at or immediately after the hearing, which resulted in a retention of these funds by Lakeforest, it appears that the Debtor was entitled to judgment in its favor.

■ In reaching this conclusion, we acknowledge the presence of § 8–401(e), and its limitation on cures of rent delinquencies to two times annually. However, § 8–401(e) refers only to attempts to cure a rental delinquency *after* the judgment for possession for non-payment is *entered.* It has no bearing on cures which occur *prior* to judgment, or prior to "adjournment of the trial," which is the subject matter of § 8–401(c)(5). It is unclear whether the tender actually accepted by Lakeforest's counsel was prior to "adjournment of the trial." However, there is no doubt that the tender to Lakeforest's agents at the mall office in the morning was prior to this time. It is therefore only post-judgment cures of rental delinquences which are limitd in repetition per year by § 8–401(e). As in Pennsylvania, the right to effect a pre-judgment cure of a rental delinquency is, by operation of § 8–401(c)(5), unlimited in Maryland also.

■ The Maryland court cannot be said to have ruled on this point. Ms. Romanczak testified that she never called the fact of her pre-trial tender of the rent to Lakeforest to the court's attention. Clearly, this is the basis of the motion for reconsideration. We predict that the Maryland court, assuming it accepts the veracity of Ms. Romanczak's testimony, would therefore proceed to grant the motion for reconsideration.

We note that our analysis is not inconsistent with the result in *Pagoda, supra.* That case involved a judgment for possession for breach of a *non-monetary* lease

condition, i.e., operating a restaurant in violation of local health regulations. There is no provision in § 8–401(c)(5) or elsewhere in the applicable law of either Maryland or Pennsylvania allowing any pre-judgment (or post-judgment) cures of any but a monetary, rental delinquency. Unlike *Pagoda,* a rental delinquency is all that is in issue here. *Accord, In re Club 99, Inc.,* 82 B.R. 166, 169 (D.D.C.1988) (Debtor could not cure non-monetary breach of a lease under District of Columbia redemption provisions relating solely to monetary, rental-payment breaches).

We also fail to detect any anti-tenant bias in the Maryland law, as interpreted by its courts. Thus, in *Berlin v. Aluisi,* 57 Md.App. 390, 470 A.2d 388 (1984), the court points out that, under that state's common law not altered until 1937, a landlord had no legal right to evict a tenant for non-payment of rent at all, being confined to the remedy of distress. 470 A.2d at 396. Liberally construing § 8–401(e), the *Berlin* court concludes that the tenant can cure under that section by tendering only the rent awarded to the landlord by judgment, and that the landlord cannot demand by rent falling due after the judgment. *Id.* 470 A.2d at 397–402. This result suggests that a liberal interpretation of the rights of tenants to cure rent delinquencies is in order, which we are confident that the Maryland landlord-tenant court would consider in ruling on the motion for reconsideration.

The Debtor does not present precisely the same analysis in its Brief as we do here. Rather, it emphasizes that the Maryland court's decision was erroneous due to the presence of § 8–401(c)(2), claiming that no rent was due to Lakeforest after Mrs. Romanczak tendered the rent to it. It then urges us to "look behind" the Maryland court's judgment and restrain the Debtor's eviction.

Authority for our so doing is claimed to be foreshadowed by two cases wherein we enjoined landlords, in unreported orders, from proceeding with evictions because we found that the respective landlord had obtained a writ of possession and actually evicted the debtors only through deception, *In re Bailey, Bailey v. Korman Corp.,*

Bankr. No. 87–05361S, Adv. No. 87–0924S (Bankr.E.D.Pa. Nov. 4, 1987) [available on WESTLAW, 1987 WL 46535]; and *In re North American Apparel, Inc., North American Apparel, Inc. v. Meritor Savings Bank,* Bankr. No. 87–05419F, Adv. No. 817–0934 (Bankr.E.D.Pa. Oct. 30, 1987). In *North American,* the Debtor's counsel had expressly foregone a bankruptcy filing on the assumption that the landlord's counsel had accepted an offer of a cure. Payment and a confirming letter were mailed to the landlord's counsel in obvious reliance on same. However, without responding and therefore while actively leading on the Debtor's counsel to assume that such a resolution had been consummated, the landlord's counsel proceeded to secretively obtain a judgment. He then evicted the Debtor, and immediately thereafter wrote to the Debtor's counsel purporting to decline the offer of a cure.

In *Bailey,* the landlord obtained the acquiescence of an indigent, unsophisticated tenant in the entry of a judgment for possession of her residential unit by assuring her that it would allow her to remain in possession as long as she made payments according to a designated payment schedule. Eight of 13 payments were then made by the Debtor in substantial compliance with the schedule. On the date that the ninth payment was due, the landlord evicted the Debtor, despite her tender of the ninth payment.

In granting equitable relief to these debtors, we cited to COLLIER REAL ESTATE TRANSACTIONS AND THE BANKRUPTCY CODE, ¶ 3.01[3], at 3–21 (1987), which provides as follows:

> There appear to be at least three theories under which leases that *are in* the process of termination *or that have been terminated prior to the filing* of the tenant's petition may be preserved as "property of the estate." These are (1) construction of the applicable state termination statute, (2) application of state-created equitable doctrines, and (3) invocation of the power of the bankruptcy court as a federal court of equity (emphasis added).

*See also In re Bronx–Westchester Mack Corp.,* 4 B.R. 730, 734 (Bankr.S.D.N.Y. 1980).

In those circumstances, we felt that both state and federal doctrines of equity, as supported by 11 U.S.C. § 105(a) of the Bankruptcy Code, justified our conduct. Both Debtors sought immediate injunctive relief in adversarial proceedings and such relief was necessary because the debtors were out of possession and had no other recourse.

However, we have expressly rejected the broad use of § 105(a) as a justification for our proceeding to take otherwise doubtfully authorized judicial actions. *See In re University Medical Center*, 82 B.R. 754, 758 (Bankr.E.D.Pa.1988); and *In re Latimer*, 82 B.R. 354, 364 (Bankr.E.D.Pa.1988). We have also recently emphasized that the power of a bankruptcy court to review judgments of other courts is limited in *In re Gulph Woods Corp.*, 84 B.R. 961, 970, (Bankr.E.D.Pa.1988). *See also, e.g., Heiser v. Woodruff*, 327 U.S. 726, 732–37, 66 S.Ct. 853, 855–58, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir.1987); *Werts v. Federal National Mortgage Ass'n*, 48 B.R. 980, 985 (E.D.Pa. 1985); and *In re Farrell*, 27 B.R. 241, 245–47 (Bankr.E.D.N.Y.1982). The Debtor cites to our decision in *In re Souders*, 75 B.R. 427, 432–33 (Bankr.E.D.Pa.1987), as support for our enjoining enforcement of the state court judgment in issue here. However, in *Gulph Woods, supra*, at 970, we pointed out that the result there, which involved declining to recognize the lien of a state-court judgment rather than injunction of its enforcement, fit into a narrow category of instances where the underlying state court judgment was constitutionally deficient.[2] That is certainly not the case here.

Here, the state court judgment appears to have been entered primarily because of the inexplicable failure of Ms. Romanczak to bring the circumstances of her previous tender of the delinquent rent—and, indeed, that she had the rent with her at the court—to the attention of that court. Lakeforest was perhaps chargeable with sharp practice in declining to accept her tender, but we do not believe that this rose to the level of the outright deception which we perceived on the part of the landlords in *North American* and *Bailey*. Furthermore, the Debtor here did not seek injunctive relief against a landlord's otherwise irreversible action, as was necessary to restore tenants already evicted to possession in *North American* and *Bailey*. Granting Lakeforest relief from the stay here will only permit the Maryland state court to give plenary consideration to all of the relevant facts in a new hearing. Especially given our desire to defer to the power of another court over its own judgments whenever possible and considering that the Maryland court may be better able to interpret Maryland law than we are, we are unwilling to deny Lakeforest's motion for relief from the stay. Only if the eviction action were properly removed to our court would we be inclined to, in effect, decide the motion for reconsideration for the state court.[3]

On the other hand, we cannot overlook the apparent merits of the Debtor's motion for reconsideration of the Maryland judgment for possession or the importance of retention of the Lakeforest store lease to the reorganization of the Debtor or the Parent. We do not think it would be in any sense just to allow the Debtor to be evicted before its apparently-meritorious motion for reconsideration is decided. We shall therefore provide that the automatic stay will remain intact for at least a short period—we have decided on ten (10) days—after the disposition of the motion for reconsideration either in the Maryland court or, if the action is removed, by us here, before allowing Lakeforest to proceed. In this

**2.** We acknowledge the holding of a court in *Triangle Laboratories, supra*, 663 F.2d at 471, that the determination of whether a lease has been terminated should be committed initially to the bankruptcy court. However, in that case, unlike here, there was no prior judgment by any other court that the lease had been terminated.

**3.** We note that removal of this action to our court, pursuant to Bankruptcy Rule (hereinafter "B.Rule") 9027, certainly remains a possibility. Such a motion would be timely under B.Rule 9027(a)(2)(B). We note that, in another instance, the Parent did not hesitate to remove a Pennsylvania state court action to our court to attack herein a default judgment entered against both the Parent and Mr. Weinstein in *In re Ma & Pa Tel, Inc., Thomson v. Ma & Pa Tel, Inc.*, Bankr. No. 85–00402K, Adv. No. 87–0553S.

way, a further appeal could also be taken if the Debtor is unsuccessful in the Maryland court without fear of immediate eviction.

We also note that it is necessary to provide the Debtor with relief from the automatic stay to pursue any appeal and, arguably, the quasi-appeal of a motion for reconsideration in the Maryland court, since the Debtor is a defendant in that action. *See Association of St. Croix Condominium Owners v. St. Croix Hotel,* 682 F.2d 446, 448–49 (3d Cir.1982). Although the Debtor did not specifically request such relief, we shall provide it as a necessary, equitable complement to our allowing Lakeforest to proceed with the landlord-tenant case in the Maryland court.

Finally, we shall defer, rather than ruling on, the Debtor's motion to assume the lease with Lakeforest. A final disposition of whether the lease was validly terminated must precede any disposition of that motion.

An Order consistent with the conclusions reached in this Opinion will issue.

### ORDER

AND NOW, this 25th day of April, 1988, after a consolidated hearing of March 16, 1988, on the Motion of Lakeforest Associates (hereinafter referred to as "Lakeforest") to Terminate Stay (hereinafter referred to as "The Lakeforest Motion"), and the Debtor's Motion to Assume Non–Residential Lease (hereinafter referred to as "The Debtor's Motion"), and upon consideration of Briefs submitted by the parties, it is hereby ORDERED AND DECREED as follows:

1. The Lakeforest Motion is GRANTED in part. Lakeforest is granted relief from the automatic stay to proceed with an action to obtain possession of real property known as Store D–207, Lakeforest Shopping Center, 710 Russell Avenue, Gaithersberg, Maryland, in the District Court of Montgomery County, Maryland, subject to the following conditions:

a. The Debtor is also granted relief from the stay to pursue its motion for reconsideration of the Order of

December 9, 1987, of the above court, or any appeal therefrom.

b. Any action by Lakeforest to physically dispossess the Debtor shall be stayed until ten (10) days after any decision of the above court, or any other court which attains jurisdiction of that action, and any decision on that motion that the Debtor's lease with Lakeforest is terminated.

2. Disposition of the Debtor's Motion is deferred until the within motion for reconsideration is finally resolved.