**In re Edgar J. ALVAREZ, Debtor.**

**Edgar J. Alvarez, Movant,**

**v.**

**Daniel J. McSwiggen and Moeun McSwiggen, Respondents.**

**No. 04–35011–TPA.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 9, 2004.

Patricia A. O'Conner, Pittsburgh, PA, for Debtor/Movant.

Scott M. Hare, Pittsburgh, PA, for Respondent.

### MEMORANDUM ORDER

THOMAS P. AGRESTI, Bankruptcy Judge.

The Debtor filed a ***Motion for Contempt for Violations of the Automatic Stay and Request for Expedited Hearing*** as a result of the pre-petition repossession by the Respondents (Debtor's landlord) of Debtor's commercial premises. On December 1, 2004 an expedited hearing took place on Debtor's Motion and the Response thereto, at which time testimony was taken and representations of counsel were made upon which record the Parties agreed the Court could decide the pending matter. The Court allowed the Parties additional time to review the Debtor's financial records which review has concluded.

The Parties agree that the sole issue for the Court to decide is whether or not the lease held by the Debtor, Edgar J. Alvarez, prior to the filing of bankruptcy remains in effect or was lawfully terminated pre-petition by the Respondents. Respondents, Daniel J. and Moeun McSwiggen, believe that the October 29, 2004 filing of their Complaint for Confession of Judgment for Possession of Real Property in Allegheny County court, coupled with their subsequent taking of possession of the real estate terminated the lease according to express provisions of the lease document. Respondents do not deny prior notice in mid-November of the bankruptcy filing. The Debtor agrees that in the event the lease was lawfully terminated the Debtor has no right to relief. The Debtor claims the lease is not terminated since, although the Respondents took possession, it was without Debtor's consent and Respondents failed to comply with "Pennsylvania Law" in obtaining possession. As such, Debtor believes Respondents wilfully violated the Automatic Stay provisions of 11 U.S.C. § 362 when possession of the premises he operated as a Mexican restaurant was not returned following demand thereby entitling Debtor to relief pursuant to 11 U.S.C. § 362(h).

Following the filing of the Respondents' Complaint for Confession of Judgment the locks to Debtor's commercial property were unilaterally changed by Respondents at some time on Sunday, October 31, 2004 without prior notice of any kind to the Debtor. Respondents failed to present any evidence, even as late as the date of the expedited hearing, demonstrating that any kind of formal service or notice of the filed Confession of Judgment action was given and/or received by the Debtor as required by the Pennsylvania Rules of Civil Procedure and basic notice of due process. *See Pa.R.C.P. 2970 et seq.* By the same token, it is undisputed that as of October 31, 2004 the Debtor possessed actual knowledge of at least Respondents' claim of termination under the lease and the "lock out" by the Respondents.

Testimony taken at the hearing focused on the ability of the Debtor, assuming relief was granted and possession given, to make payments of the amounts due and owing under the lease so as to effect prompt cure of rent deficiencies pursuant to 11 U.S.C. § 365(b)(1) and provide adequate protection. The Parties agreed, at a minimum, a rent deficiency existed in the gross amount of $9,747.97. A dispute existed as to whether or not the June, 2003 NSF rental payment in the amount of $2,200 had ever been paid. The testimony of the Respondent Moeun McSwiggen is persuasive and credible as to this issue.

Ms. McSwiggen testified that although the June 2003 rent payment was returned NSF, due to Debtor's admitted, regular practice of making late rent payments, it did not become clear to her until July, 2004, after review of her bank and other records whether or not the NSF payment had ever been resolved. The Debtor admitted that the June, 2003 payment was returned NSF but was unsure as to whether the NSF check had ever been cured at a later time. The Debtor offered no supporting documentary evidence in this regard and could not specifically recall if the rent payment was ever paid even though he thought it had. In light of the foregoing, it is clear to the Court that the gross amount of the payment necessary to make cure pursuant to 11 U.S.C. § 365(a) is $11,947.97, subject only to determination as to the appropriate credit for an initial security deposit made by the Debtor in the amount of $2,950.

Pa.R.C.P. 2973.1 mandates under the circumstances of this case where possession was not first "lawfully" obtained, that

execution on any judgment for possession can only be obtained by following the specific rules governing enforcement of an action in ejectment which requires obtaining and executing on a Writ of Possession. No such writ was obtained in this case. The Respondents filed the Complaint in Confession of Judgment for Possession of Real Property in accordance with the Pennsylvania Rules of Civil Procedure which would have entitled them to possession had they completed the process. Based upon the record before the Court it is clear that the required procedure has not been properly completed by the Respondents.

Admittedly, by its language the commercial lease in question provides a mechanism to terminate the lease and obtain summary possession upon rent payment default. The Court can find no authority (nor have the Respondents provided the Court any) to support Respondent's unilateral actions in effecting a summary dispossession of the Debtor without any prior notice even in a commercial lease situation. Pennsylvania requires a specific procedure be utilized to obtain possession when it is not voluntarily given to a party. Respondents claim that Pennsylvania allows for use of "alternate remedies" to obtain possession. The Court is unaware of any support for this proposition. Basic notions of due process applied to the facts of this case require otherwise. There is no dispute Debtor did not voluntarily tender possession of the premises. Respondents took it upon themselves to unilaterally change the locks on the premises without notice when the business was closed at some time early on Sunday, October 31, 2004. The Debtor was notified for the first time of the summary dispossession when he confronted the Respondents after the changing of the locks and loss of possession. Clearly there was no voluntary repossession of the Property. Pa.R.C.P.

2971 et seq. specifically provides (without exception) for the procedure to be employed when ejectment is necessary.

■ Based upon the record before the Court it is undisputed that none of the required procedural requirements were met. Respondents' counsel admitted that the mere filing of the complaint for possession, alone, was not enough to terminate the lease. Respondents' counsel admitted the filing must be coupled with possession. The Court believes that the unilateral and summary dispossession occurring in this case, without knowledge of the Debtor, is not the type of "lawful" possession which supports termination of a lease once possession is obtained. Since the Respondents did not previously obtain lawful possession of the property the mere filing of the Complaint for Possession did not terminate the lease. *See: C & C TV & Appliance,* 97 B.R. 782 (Bankr.E.D.Pa. 1989) *aff'd on other grounds* 103 B.R. 590 (E.D.Pa.1989); *In re Telephonics, Inc.*, 85 B.R. 312 (Bankr.E.D.Pa.1988).

■ Because we find the lease in this case was not terminated pre-petition, as of the date of filing bankruptcy the Debtor retained an interest in the leased property beneficial to the Debtor's Estate. Any failure to return that property to the Debtor after notice of the bankruptcy is a willful violation of the automatic stay potentially warranting imposition of damages, attorneys fees, costs and punitive damages. *In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir.1990) (even a tenancy at sufferance to the landlord is property of the estate subjecting the landlord to imposition of damages when attempts to evict continue post-bankruptcy.)

*AND NOW*, this *8th* day of *December, 2004*, based upon the foregoing specific findings and representations of counsel at

the time of hearing to which there was no objection by either Party,

It is **ORDERED, ADJUDGED and DE-CREED** as follows:

(1) Although the Court finds the violation of the Automatic Stay under these circumstances not to have been in bad faith nevertheless a violation occurred. The Respondents injured the Debtor by causing the closing of his restaurant without notice. Now the Debtor is confronted with the difficult and costly task of reopening the restaurant and bringing it back to full operation which, but for the Respondent' action post petition, he would not be confronted with at this time. Therefore the Court finds the Respondents in contempt for violation of the Automatic Stay and imposition of damages appropriate. 11 U.S.C. § 362(a).

■ (2) The Debtor is to be given possession of the premises known as 1701 East Carson Street no later than Noon, December 10, 2004. Although testimony indicated the Debtor generates income of $1,000 a day, six days a week, there was no corresponding testimony as to offsetting costs. On cross examination the Debtor testified he could not pay when due the $2,200 rent for August, September and October, 2004. He further testified that the $1,000 per day income was an "average" and that business for August, September and October, 2004 had "slowed down" when compared to prior months. Obviously, despite the alleged income level of $1,000 per day there was nothing left after payment of other expenses to pay rent, at least for August, September and October. Following the hearing the Parties were given the opportunity to support the Debtor's representations in this regard. No support exists for the allegations. Now that the Parties have had an opportunity to review the Debtor's records, the Debtor's financial position appears even worse than originally gleaned from the Debtor's testimony. As such, there is nothing in the record to support a "per diem" damage award or "fine" as requested by the Debtor for each day the premises were closed in violation of the Automatic Stay. Rather, the Court finds actual damage for Respondents' violation of the Automatic Stay in the form of loss of the "restart-up costs" for Debtor's business. The Debtor testified that he would receive labor and other assistance in the form of food and inventory donated by family and friends if he were to restart his business. The Debtor acknowledged he had no cash for other expenses such as rent. Therefore, for violation of the Automatic Stay the Court shall award rental "restart-up costs" in the form of damages equal to the pro rata share of rent remaining for the month of December, 2004 during the period of the tenant's occupancy, that is, as of December 10th rent is computed at $70.97 per day ($2,200 ÷ 31 days × 21 remaining days) and equal to actual damages in the amount of $1,490.37 for violation of the Automatic Stay to be amortized/offset by the Debtor's occupancy in the premises without payment of rent for the remainder of December, 2004. Thereafter, in light of the admitted very short term remaining on the lease, i.e., March 31, 2005, equity requires that Debtor shall make timely monthly rental payments in the amount of $2,200 on or before the first day of each month beginning January 1, 2005 throughout the remaining period of the lease, i.e., February 1, 2005 and March 1, 2005. Payment shall be by cash, money order or certified check payable to the Respondents. Failure to make any payment on a timely basis (*time being of the essence*) will result in immediate termination of the lease and return of possession to Respondents after notice and hear-

ing upon Respondents filing of a motion requesting emergency hearing.

■ (3) Debtor seeks "immediate" possession of the premises. In light of the short term remaining on the lease we are treating this request as a motion to assume lease under 11 U.S.C. § 365(a). However, the record is clear the Debtor has no funds at this time to provide adequate assurance of continued payment under the lease or the financial means to effect prompt cure under the lease, all of which is required by 11 U.S.C. § 365(b)(1) if the lease is assumed pending its natural termination through March 31, 2005. Nevertheless, if the Debtor assumes possession pursuant to this Order, on or before January 7, 2005, the Debtor shall make payment of $4,000 toward arrearages of $11,947.37. An additional cure payment of $4,000 is due Respondents on or before February 7, 2005. The final cure payment in the amount of $3,947.37 will be due on or before March 1, 2005 (in addition to rent and less ultimate determination of the appropriate credit for the $2,950 security deposit.) All payments shall be in the form of cash, money order or certified check payable to the Respondents, *time being of the essence.* Failure to make such payment shall result in immediate termination of the lease and return of possession of the premises to the Respondents following notice and hearing upon filing of the appropriate motion requesting emergency hearing.

(4) A status conference is scheduled on *January 5, 2005 at 1:30 P.M.* in Courtroom D, 54th Floor, U.S. Steel Tower, Pittsburgh, PA to determine whether or not the Parties have entered an agreement as to the appropriate credit for the "security deposit" in the amount of $2,950 or, if not, to schedule an evidentiary hearing on that specific matter to follow soon after the date of the status conference, and to determine Debtor's ability to tender future cure payments beginning on January 7, 2005.

(5) Movant shall immediately serve this Order on the Respondents and file a Certificate of Service within five (5) days of said service.