**In re ELM INN, INC., Debtor.**

**Eldon ANDERSON and Shirley Anderson, Appellants,**

v.

**ELM INN, INC. and Continental Savings of America, Appellees.**

**BAP No. EC–88–1987–PMoA. Bankruptcy No. 288–03873–A–11.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 20, 1989.

Decided Oct. 6, 1989.

Phillip Keith, Amen & Keith, San Francisco, Cal., for appellants.

Spencer P. Scheer, Michael Polk, San Rafael, Cal., for appellees.

Before PERRIS, MOOREMAN and ASHLAND, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Lessors appeal from an order denying their motion for surrender of property which was purportedly leased to the debtor. The parties dispute whether the debtor or its principal held the lessee's interest in the property. The bankruptcy court denied the debtor's motion to assume the lease without addressing who held the lessee's interest in the lease. Appellants then filed their application for an order for surrender of the property pursuant to 11 U.S.C. § 365(d)(4).[1] We affirm the denial of appellants' application.

## FACTS

The debtor-in-possession, Elm Inn, Inc. ("the debtor"), is a corporation that operated a motel business known as The Elm Inn on five adjoining parcels of land ("the property") in South Lake Tahoe, California. Eldon and Shirley Anderson ("the Andersons") own one of the parcels, which will be referred to as Parcel 1. Parcel 1 has been leased continuously since 1959 by the Andersons or their predecessors in interest under a single written lease which expires in 2010.

In 1981, Rumubhai K. Patel and Urmila Patel ("the Patels"), doing business as The Elm Inn, acquired the lessee's interest in Parcel 1 and the leasehold to the four adjoining parcels, which will be referred to as Parcels 2–5. In March of 1984, the Patels purchased the fee simple interest in Parcels 2–5. To finance the purchase, the Patels executed and delivered to appellee Continental Savings of America ("Continental") a promissory note in the principal amount of $3,600,000 secured by a deed of trust on Parcels 2–5. The Patels assigned to Continental their lessee's interest in Parcel 1 for purposes of additional security. The Patels' interest in all of the parcels was also subject to a junior deed of trust for the benefit of Frank Paratore ("Paratore"), the president and sole shareholder of the debtor.

During their tenancy, the Patels defaulted under the lease numerous times. The Andersons' attempts to enforce the lease and evict the Patels were stayed by three bankruptcy petitions filed by the Patels. In two of the three bankruptcy cases, the bankruptcy court allowed the Patels to assume the lease. The bankruptcy court dismissed the other case before a hearing on the assumption of the lease.

In September of 1987, foreclosure of the junior deed of trust in favor of Paratore occurred. Paratore purchased all of the Patels' interest in the lease and the adjoining parcels at the foreclosure sale.

Thereafter, Paratore formed the debtor for the purpose of operating The Elm Inn motel business. The parties dispute whether Paratore then conveyed his fee interest in Parcels 2–5 and assigned his leasehold interest in Parcel 1 to the debtor. The Andersons contend that an assignment of the leasehold interest in Parcel 1 to the debtor occurred. Continental contends that no such assignment occurred. There is conflicting evidence regarding whether the debtor or Paratore held the leasehold interest and Parcels 2–5.

Early in 1988, Continental initiated non-judicial foreclosure proceedings against the property. In addition, Continental sought and obtained, on May 16, 1988, the appointment of a receiver to manage and control the property.

The debtor filed its voluntary Chapter 11 petition on June 13, 1988. On July 12, 1988, the debtor filed a motion to assume the lease with the Andersons. The Andersons opposed the motion contending that the lease was in default and the debtor must cure or provide adequate assurance of cure of the existing defaults and provide adequate assurance of future performance. Continental filed a statement of position on the motion to assume contending *inter alia* that the debtor has no right to assume the lease because it is not a party to the lease. On August 10, 1988, the bankruptcy court

---

1. All references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless otherwise indicated.

denied the debtor's motion to assume the lease. The record does not reflect that the court gave any reasons for denying the motion.

On August 22, 1988, the Andersons submitted an *ex parte* application for an order for surrender of the leased premises contending that the lease was rejected and the debtor was required to immediately surrender the leased premises under section 365(d)(4). The bankruptcy court issued an order granting the *ex parte* application on August 23, 1988. Thereafter, the court issued a writ of execution allowing the Andersons the possession of Parcel 1.

On August 24, 1988, the bankruptcy court entered an order, on a motion filed by Continental on July 1, 1988, vacating and extinguishing the automatic stay with respect to Continental. The order allowed Continental to complete foreclosure of the property and allowed the receiver to re-enter the property pursuant to the authority granted by the prior state court order. The receiver reentered and took possession of the property on September 2, 1988. On that same date, the receiver paid delinquent property taxes on the property, thereby curing the default under the lease.

On August 29, 1988, Continental filed a motion for clarification of the court's prior order denying assumption of the lease, seeking a determination of the rights of the respective parties to the lessee's interest in the lease. On August 30, 1988, Continental filed an *ex parte* application to recall the writ of execution allowing Andersons possession of Parcel 1. The bankruptcy court granted the application and recalled the writ on August 30, 1988.

The Andersons refiled, as a noticed motion, their application for an order for surrender of possession on September 7, 1988. The bankruptcy court heard Continental's motion for clarification and the Andersons' application for an order for surrender of possession on September 19, 1988. On September 22, 1988, the bankruptcy court entered an order denying Continental's motion for clarification. The order stated, *inter alia*, that the court's order denying assumption of the lease "did nothing more

than to deny the subject motion by debtor to assume the lease and nothing more should be construed or read into it." Continental did not appeal the denial of its motion. On October 20, 1988, the bankruptcy court denied the Anderson's application for an order for surrender of possession. On October 24, 1988, the Andersons filed this timely appeal from the denial of their application. Subsequently, the bankruptcy court entered findings of fact and conclusions of law, finding, *inter alia*, that the nature and extent of the debtor's interest in the lease was not determined and that the property was in control of a duly appointed receiver at the time the Andersons submitted their application for possession. The bankruptcy court concluded that the application was moot because the property was in possession of the state court receiver and that the termination of the debtor's rights under the lease did not automatically allow for granting of the application under section 365(d)(4).

## ISSUES

1. Whether this appeal is moot.

2. Whether the bankruptcy court erred in declining to order the surrender of the leased premises to the lessor under section 365(d)(4).

## STANDARD OF REVIEW

This appeal primarily concerns the interpretation of section 365(d)(4) which is a question of law that is reviewed *de novo*. *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848, 849 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988).

## DISCUSSION

1. *Whether this appeal is moot.*

■ Continental argues that this appeal is moot under section 363(m) because, pursuant to an order granting relief from stay, it foreclosed upon the lessee's interest in the lease and acquired that interest as a good faith purchaser at the foreclosure sale. Continental also argues that the Andersons' motion for an order for the

surrender of the leased premises was rendered moot in the court below, and impliedly on appeal, when the receiver took possession of the leased premises. These arguments are without merit.

Initially we noted that section 363(m) does not apply because there was no order authorizing the trustee or debtor-in-possession to sell or lease property under section 363(a) or (b). However, the Ninth Circuit has adopted a similar mootness rule applicable when an appellant fails to obtain a stay of an order that lifts the automatic stay to permit the sale or foreclosure of the debtor's assets. *See In re Onouli–Kona Land Co.*, 846 F.2d 1170 (9th Cir.1988). This mootness rule developed from the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot. *Id.* at 1172.

The mootness rule of *Onouli–Kona Land Co.* is not applicable to this appeal because the Andersons do not appeal from an order which authorized the sale or lease of property or which lifted the stay so that such a sale could occur. The Andersons appeal from an entirely separate order. The Andersons did not have notice of or an opportunity to appear in connection with the relief from stay order. Arguably, they would not have had standing to obtain a stay of that order pending this appeal. It defies logic to say that their failure to obtain a stay of that order moots this appeal. In addition, contrary to *Onouli–Kona Land Co.* and similar cases, the order authorizing relief from stay and any foreclosure sale pursuant to that order did not cut off the rights of the Andersons in the property. It is not disputed that Continental acquired the leasehold interest subject to the rights of the Andersons.

■ Similarly, the fact that a receiver had been appointed does not render the turnover issue moot as the appointment of a receiver does not constitute a change of circumstances that would prevent effective relief. If the Andersons were to prevail on appeal, this would involve a determination that section 365(d)(4) terminated the entire leasehold interest and Continental's security interest in the lease as well. The Andersons would then be entitled to the property as against the debtor, persons claiming rights in the leasehold through the debtor and Continental. The receiver occupies no better position than that which was occupied by the party for whom he acts and takes the property subject to the same claims, liens and equities that existed before his appointment. *See, e.g., Downey v. Humphreys*, 102 Cal.App.2d 323, 227 P.2d 484, 492–93 (1951). Thus, the appointment of a receiver for the debtor's property at the request of Continental could not defeat the Andersons' right to the property and could not preclude effective relief.

2. *Whether the bankruptcy court erred in declining to order the surrender of the leased premises to the lessor under section 365(d)(4).*

■ Appellant contends that pursuant to section 365(d)(4), upon the failure of debtor to assume the lease within the time set forth in that section, the lease was deemed rejected and terminated and that they were entitled to an order requiring the immediate surrender of the property. Even if the Andersons' contention is correct that insofar as the debtor held the lessee's interest in the lease, the lease was deemed rejected and the debtor's interest terminated, this does not mean that the Andersons are entitled to the relief that they seek. Lease rejection and termination of the debtor's interest in the leased premises does not mean that the entire lease is terminated and the landlord is entitled to immediate possession of the property where, as here, the parties dispute whether the debtor has an interest in the lease. By its plain terms, section 365(d)(4) applies to "an unexpired lease of nonresidential real property *under which the debtor is the lessee*" (emphasis supplied). The parties dispute and the bankruptcy court declined to decide whether the debtor is the lessee under the lease in question. In the absence of a determination that the debtor is the lessee and has the right to possession of the property, section 365(d)(4) cannot be applied to com-

pel the surrender of the property to the Andersons.[2]

A determination of the rights of various parties to the leasehold is not an appropriate determination to make on a motion to compel the surrender of property under section 365(d)(4). Although whatever interest the debtor had in the lease was terminated by section 365(d)(4), *see Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077 (9th Cir.1989), Paratore and Continental claim an interest in the lease. In addition, parties holding the lessee's and lessor's interests in the lease prior to Paratore and the Andersons may have retained some interest in the lease. In determining whether to order the surrender of the property a court would, in addition to determining the validity of the purported assignment from Paratore to the debtor, have to unravel these interests to determine who is obligated to surrender the property and to whom it should be surrendered.

Courts disagree as to whether the landlord can, by a motion, obtain an order requiring the trustee or debtor in possession to surrender property possessed by the debtor after termination of the lease pursuant to section 365(d)(4). Some courts issue orders requiring debtor to surrender the leased premises to the landlord. *See, e.g., In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bankr.C.D.Cal.1985), *aff'd*, 66 B.R. 121 (9th Cir. BAP 1986), *rev'd on other grounds*, 831 F.2d 848 (9th Cir.1987); *In re O.P. Held, Inc.*, 77 B.R. 388 (Bankr. N.D.N.Y.1987); *In re Hurst Lincoln–Mercury, Inc.*, 70 B.R. 815, 817 (Bankr.S.D. Ohio 1987). Other courts decline to issue such orders on a motion for surrender of possession. *See In re Adams*, 65 B.R. 646 (Bankr.E.D.Pa.1986); *In re Re–Trac Corp.*, 59 B.R. 251, 258 (Bankr.D.Minn.1986).

In this case, given the conflicting claims to the lessee's interest in the lease, the issuance of an order on a motion requiring the surrender of the premises to the landlord is inappropriate. None of the cases cited above in which the court issued such an order involved situations, as in this case, where there were conflicting claims to the leasehold interest which the court was required to unravel under state law before ordering the surrender of the property. In those cases it was undisputed that the debtor lawfully possessed the leased premises. In this case it is unclear whether the debtor or its principal possessed the entire lessee's interest in the premises.

Given these circumstances, we believe the bankruptcy court correctly declined to issue an order requiring the immediate surrender of the leased premises and correctly declined to unravel the property interests of various parties under state law. Because rejection of the lease terminated any interest of the debtor in the lease, the dispute primarily involves the rights of others and would have little impact on the bankruptcy estate. In such circumstances and in particular under the posture of this case, it is questionable whether the bankruptcy court should exercise its jurisdiction to decide state law property disputes involving third parties. *See In re Dial–A-Tire, Inc.*, 78 B.R. 13, 16 (Bankr.W.D.N.Y. 1987); *In re Zip Enterprises, Inc.*, 28 B.R. 223 (Bankr.M.D.Ala.1983).

## CONCLUSION

For the reasons set forth above, we affirm the bankruptcy court's refusal to order the surrender of the leased premises to the Andersons.

---

**2.** On appeal, the Andersons argue that the lease was effectively assigned to the debtor and, in essence, ask the Panel to make a determination that there was an effective assignment. Such a determination would involve making a factual finding on conflicting evidence, a task which is inappropriate for an appellate tribunal.