O’SCANNLAIN, Circuit Judge:
 

 This appeal involves a complicated dispute over a parcel of land which figures in a bankruptcy proceeding.
 

 I
 

 The Bankruptcy Appellate Panel (BAP) has set forth the relevant facts in exhaustive detail in its opinion, and the parties have not challenged that recital.
 
 See In re Elm Inn, Inc.,
 
 105 B.R. 546, 547-48 (Bankr.9th Cir.1989). For convenience, we restate the highlights here.
 

 In 1981, the Andersons
 
 [1]
 
 leased the relevant parcel of land and four others to Ru-mubhai and Urmila Patel, who were then doing business as The Elm Inn. Three years later, the Patels purchased the four other parcels in fee simple from the Andersons with the help of a $3.6 million loan from appellee Continental Savings of America (“Continental”). As collateral, the Patels offered a deed of trust on the four purchased parcels, and, as additional security, they assigned Continental their leasehold in the first parcel. Significantly, the Patels’ interest in all five parcels was subject to a junior deed of trust for the benefit of Frank Paratore.
 

 During their tenancy, the Patels defaulted on their lease numerous times. The Andersons attempted to enforce the lease and to evict the Patels, but the Patels filed three successive bankruptcy petitions and effectively thwarted those efforts. Finally, in 1987, pursuant to a foreclosure on the junior deed of trust, Paratore purchased the Patels’ leasehold and fee interests in the five parcels. Paratore then formed the debtor corporation, and as president and sole shareholder, he continued to operate The Elm Inn motel business. Precisely what Paratore did, as a factual matter, with his legal interests in the five parcels remains in doubt:
 

 The parties dispute whether Paratore then conveyed his fee interest in Parcels 2-5 and assigned his leasehold interest in Parcel 1 to the debtor. The Andersons contend that an assignment of the leasehold interest in Parcel 1 to the debtor occurred. Continental contends that no such assignment occurred. There is conflicting evidence regarding whether the debtor or Paratore held the leasehold interest....
 

 Id.
 
 at 547.
 

 In early 1988, Continental initiated nonjudicial foreclosure proceedings against the first parcel, and on May 16, 1988, in a state court action, Continental successfully obtained appointment of a receiver to manage and control the property. On June 13, however, the debtor voluntarily filed for Chapter 11 protection, thereby invoking an automatic stay of Continental’s proceedings. Continental responded on July 1 by filing a motion for relief from the stay, but before the bankruptcy court could act on that motion, the debtor filed a motion to assume the lease with the Andersons.
 

 Both the Andersons and Continental opposed this motion.
 
 [2]
 
 The former contended that the lease was already in default and that in order for the debtor to assume the lease, it had to cure the existing defaults or provide adequate assurance of its ability to do so, as well as assurance of future performance. The latter contended that the debtor had no right to assume the lease in any event because Paratore was the leasehold’s real party in interest. The bankruptcy court denied the motion without explanation on August 10.
 

 On August 22, 1988, the Andersons filed an ex parte application for an order com
 
 *633
 
 manding the debtor to surrender the leased property pursuant to section 365(d)(4) of the Bankruptcy Code. The court initially granted that application and issued a writ of execution. On August 24, however, the court granted Continental’s pending motion for relief from the automatic stay, thereby permitting Continental to complete foreclosure and allowing its receiver to re-enter the property pursuant to the prior state court order. On August 30, the court then revoked the writ it had conferred upon the Andersons, and on September 2, Continental’s receiver took possession of the premises.
 

 Justifiably confused, the parties filed complementary motions in an effort to clarify the situation. For their part, the Andersons refiled, as a noticed motion, their original application for an order of surrender by the debtor. Continental, on the other hand, filed a “motion for clarification” of the court’s earlier denial of the debtor’s motion to assume the lease. In essence, both parties were asking the bankruptcy court to untangle the competing interests in the leasehold and to declare the respective rights of the Andersons, Continental, the debtor, and Paratore.
 

 The bankruptcy court balked. It denied Continental’s motion for clarification on September 22, and it denied the Andersons’ application for a surrender order on October 20. On October 24, the Andersons appealed to the BAP, and subsequently, on November 7, the bankruptcy court filed its findings of fact and conclusions of law. The court concluded that (a) the nature and extent of the debtor’s interest in the lease was unclear; (b) the property in question was already in the possession of a receiver — duly appointed under state law — when the Andersons filed their application; and (c) as a result, the Andersons’ application was moot.
 

 On October 6, 1989, the BAP reversed the bankruptcy court's determination of mootness but affirmed its denial of the Andersons’ application on the merits. The Andersons then filed this timely appeal.
 

 II
 

 A
 

 Section 365(d)(4) of the Bankruptcy Code provides:
 

 in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of non-residential real property
 
 under which the debtor is the lessee
 
 within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.
 

 11 U.S.C. § 365(d)(4) (1988) (emphasis added). The Andersons contend that because there was no assumption or rejection of the debtor’s lease within sixty days of the debt- or’s bankruptcy filing — and because there was no for-cause extension — they are entitled to a surrender order under this provision.
 

 As a purely legal matter, the Andersons’ argument has considerable force. The voluntary filing of a Chapter 11 petition “constitutes an order for relief” for purposes of section 365(d)(4). 11 U.S.C. § 301 (1988);
 
 see also In re Victoria Station, Inc.,
 
 840 F.2d 682, 684 (9th Cir.1988). Accordingly, the relevant sixty-day period commenced on June 13, 1988, when the debtor filed for bankruptcy. Because the bankruptcy court did not enter an order assuming the lease, rejecting the lease, or extending the time within which to enter such an order during the next sixty days, the period duly expired on August 12, 1988.
 
 [3]
 

 By operation of law, the debtor’s posses-sory interest in the lease terminated on that date, and the lessor’s right to immediate surrender of the property simultaneously accrued.
 
 See Sea Harvest Corp. v. Riviera Land Co.,
 
 868 F.2d 1077, 1080-81 (9th Cir.1989);
 
 In re Harris Pine Mills,
 
 862 F.2d 217, 219 (9th Cir.1988). When the Andersons filed their application for a sur
 
 *634
 
 render order on August 22, therefore, they were fully entitled to have the debtor vacate the premises.
 

 There is, as the BAP explained, some disagreement among the courts over whether a lessor in the Andersons’ position can, by motion, obtain a court order to
 
 require
 
 the trustee or debtor to surrender the leased property.
 
 See In re Elm Inn, Inc.,
 
 105 B.R. at 550. Some courts have held that the deemed rejection of a lease under section 365(d)(4) “merely places the creditor[-lessor] in a position to pursue remedies under the state law of landlord and tenant to obtain possession of the premises.”
 
 In re Adams,
 
 65 B.R. 646, 649 (Bankr.E.D.Pa.1986);
 
 see also In re Re-Trac Corp.,
 
 59 B.R. 251, 258 (Bankr.D.Minn.1986) (“such relief is properly sought by complaint”).
 

 The majority and far more persuasive view, however, is that such an order is available to an entitled party.
 
 See, e.g., In re U.S. Fax, Inc.,
 
 114 B.R. 70, 73 (Bankr.E.D.Pa.1990) (rejecting
 
 Adams
 
 and holding that “the language and legislative history of section 365(d)(4) demonstrate that Congress did not intend for creditors to pursue state-law remedies and that requiring creditors to pursue such remedies would frustrate the statute's purpose”);
 
 In re Chris-Kay Foods East, Inc.,
 
 118 B.R. 70, 72 (Bankr.E.D.Mich.1990) (granting surrender order and holding that “§ 365(d)(4) prevails over contrary state law”);
 
 In re Damianopoulos,
 
 93 B.R. 3, 6 (Bankr.N.D.N.Y.1988) (granting surrender order and holding that when a lease is deemed rejected under section 365(d)(4) it is “no longer property of the [bankrupt] estate”);
 
 In re O.P. Held, Inc.,
 
 77 B.R. 388, 391 (Bankr.N.D.N.Y.1987) (granting surrender order);
 
 In re Hurst Lincoln-Mercury, Inc.,
 
 70 B.R. 815, 817 (Bankr.S.D.Ohio 1987) (same).
 

 As these courts have noted, the plain language and purpose of section 365(d)(4), the necessarily preemptive force of the Bankruptcy Code, and the broad equitable powers of bankruptcy judges all weigh in favor of granting a surrender order to a lessor who, under the terms of the provision, clearly deserves one.
 
 See
 
 11 U.S.C. § 105(a) (1988) (“The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”). To the extent that they have addressed this issue at all, the courts of this circuit have agreed with this reasoning and have endorsed the majority view.
 
 See In re Southwest Aircraft Servs., Inc.,
 
 53 B.R. 805, 811 (Bankr.C.D.Cal.1985) (granting surrender order),
 
 aff'd,
 
 66 B.R. 121 (Bankr.9th Cir.1986),
 
 rev’d on other grounds,
 
 831 F.2d 848 (9th Cir.1987),
 
 cert. denied,
 
 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988);
 
 In re Gillis,
 
 92 B.R. 461, 469 (Bankr.D.Haw.1988) (approvingly citing
 
 O.P.
 
 Held). As a purely legal matter, therefore, the Andersons appear to be entitled to the order they seek.
 

 B
 

 The problem with the Andersons’ argument is its factual premise, not its legal reasoning. By its own terms, section 365(d)(4) only applies to leases “under which the debtor is the lessee,” and both the bankruptcy court and the BAP have explained that the precise nature of the debtor’s interest in the Anderson lease remains unclear: “[t]here is conflicting evidence regarding whether the debtor or Pa-ratore held the leasehold interest.”
 
 In re Elm Inn, Inc.,
 
 105 B.R. at 547. If Para-tore never assigned the lease to the debtor, then the leasehold is not part of the bankrupt estate at all, and section 365(d)(4) is wholly inapplicable. No legal argument in the world can help the Andersons in this action if the leasehold in question was never an asset subject to the bankruptcy. Similarly, if the debtor’s interest in the lease is only partial, no surrender order can issue without a prior factual determination of the extent of that partial interest.
 

 Accordingly, the BAP was correct in refusing to overturn the bankruptcy court’s denial of the Andersons’ motion: “given the conflicting claims to the lessee’s interest in the lease, the issuance of an order on a motion requiring the surrender of the premises to the landlord is inappropriate.”
 
 Id.
 
 at 550.
 

 
 *635
 
 C
 

 This, however, is not the end of the inquiry. To say that the bankruptcy court and the BAP were correct in refusing to grant the Andersons’ motion in light of conflicting claims to the leasehold is
 
 not
 
 to say that the BAP was correct in affirming the bankruptcy court’s decision. ■ Rather, the very same rationales that compel the bankruptcy court to issue a surrender order when it is appropriate
 
 obligate
 
 the court to resolve competing claims to the extent necessary to determine
 
 if it
 
 is appropriate.
 

 As the court in
 
 US. Fax
 
 explained, Congress intended section 365(d)(4), as amended in 1984, to come to the rescue of landlords who suffer unfairly from delays encountered in bankruptcy proceedings.
 
 See
 
 114 B.R. at 72 (quoting comments by Senators Dole and Hatch,
 
 reprinted in
 
 1984 U.S.Code Cong. & Admin.News 576, 586-87, 590, 598-99). Congress clearly intended to bring the broad equitable powers of bankruptcy courts and the preemptive authority of the Bankruptcy Code to bear upon the problems that it envisioned that this section would address. In defense of its affirmance, the BAP simply stated that “[a] determination of the rights of various parties to the leasehold is not an appropriate determination to make on a motion to compel the surrender of property under section 365(d)(4).”
 
 In re Elm Inn, Inc.,
 
 105 B.R. at 550. This statement, however, appears without citation or legal explanation and contradicts the apparent congressional purpose of the statute.
 

 Having determined that the Andersons’ motion was not moot and that the bankruptcy court had erred on that ground, the BAP should have remanded to the bankruptcy court for a factual determination of the rights and interests of the parties and for corresponding further proceedings on the Andersons’ motion. If, on remand, the court were to determine that Paratore did in fact assign the leasehold to the debtor, then it follows that the leasehold is an asset subject to the bankruptcy and, accordingly, to the terms of section 365(d)(4). In that case, the Andersons deserve their order. If, on the other hand, the court were to determine that Paratore maintained the leasehold in his own name, then it may not be an asset subject to the bankruptcy, and Continental may be able to pursue its rights as a creditor of Paratore in state court.
 

 Ill
 

 In short, as a purely legal matter, the Andersons’ argument is persuasive, but they wrongly contend that there is no meaningful factual dispute in the record. Proper disposition of this action depends entirely upon a resolution of conflicting evidence concerning the precise interests of the parties in the Anderson lease. Having determined that (a) the action is not moot and (b) the bankruptcy court correctly declined to grant the Andersons’ motion on the record
 
 as it stands,
 
 the BAP should have remanded for a resolution of the dis-positive factual dispute and for appropriate further proceedings.
 

 We therefore reverse and remand to the BAP with instructions to remand to the bankruptcy court for a hearing and decision on whether the Andersons, as landowners and lessors, are entitled to a surrender of the leased property.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Eldon and Shirley Anderson are brother- and sister-in-law. Shirley is the widow of Eldon’s brother John.
 

 [2]
 

 . Continental sought and received the court’s permission to intervene in order to oppose the motion. The Andersons opposed the motion as a party to the action.
 

 [3]
 

 . Indeed, the bankruptcy court explicitly
 
 denied
 
 the debtor’s motion for assumption of the lease on August 10, 1988. No other relevant order was filed before the twelfth.